IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| SHAMAR BETTS, | ) | |
| | ) | |
| Defendant. | ) | Case No. 20-cr-20047 |

**RESPONSE TO GOVERNMENT'S EMERGENCY MOTION TO STAY AND REVOKE RELEASE ORDER**

NOW COMES the Defendant, SHAMAR BETTS, by and through his attorney, ELISABETH R. POLLOCK of the Federal Defender's Office for the Central District of Illinois, and in response to the Government's Emergency Motion to Stay and Revoke Release Order states as follows:

**I.    Background**

On June 5, 2020, Judge Eric Long signed a Criminal Complaint charging Defendant Shamar Betts with inciting a riot in violation of 18 U.S.C. § 2101. R. 1. The Complaint charged that on May 31, 2020, Mr. Betts posted statements on Facebook.com expressing anger over the death of George Floyd at the hands of Minneapolis Police earlier that month[1]. Mr. Betts made several posts that day, some of which are the subject

---

[1] "I'm just the messenger. We're literally sitting on our a** watching the whole country and even others fight for our black rights. Ya'll think we don't suffer through inequality here EVERYDAY. We gotta put Champaign/Urbana on the map mfs gone hear and fear us too. SLIDE let's get busy Justice for George F***12." R. 1, pg. 5.

of the instant case, calling for people to come out to Marketplace Mall in Champaign to "riot."

Mr. Betts then traveled to Mississippi to stay with his father because he was afraid of getting arrested for his actions that evening. Champaign County put out a warrant for his arrest for burglary. According to the Complaint, Mr. Betts' whereabouts were known to the FBI within days, on June 5, 2020. R. 1, pg. 7. A Federal arrest warrant was issued on June 5, 2020. R. 3. He was arrested in Mississippi on that date. D/E 6/5/20.

Mr. Betts first appeared before Judge Long by video on July 6, 2020, and the Federal Defender's Office was appointed to represent him. D/E 7/6/20. Counsel set out to find a valid third party custodian to proffer to the Court, and did so. (See Pretrial Service Report dated July 13, 2020). After a contested hearing, the Court elected to release Mr. Betts on conditions, finding that conditions existed to ensure his appearance and the safety of the community. The Government then filed an Emergency Motion to Revoke said Order because it alleges Mr. Betts is a risk of flight; the Government seemingly does not dispute Judge Long's ruling regarding risk of danger to the community. R. 22. This Response follows.

II.   **Legal Posture**

The Bail Reform Act states that a judicial officer *shall* release a defendant on Personal recognizance *unless* it is determined that such release will not reasonably assure the appearance of the defendant as required or will endanger the safety of the

public. 18 U.S.C. § 3142(b). In making the determination, the Judge should consider the nature and circumstances of the offense, the weight of the evidence against the person, the history and characteristics of the person, include the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, whether, at the time of the offense the person was on probation, on parole, or on other release, and the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

In the present case, the Government has correctly cited the legal standards at issue today: it must prove risk of flight by a preponderance of the evidence, and this Court may review Judge Long's decision *de novo.* R. 22. Regardless, Mr. Betts believes that Judge Long's decision was correct, and in support states the following:

### A. Nature and Circumstances of the Offense

According to the Complaint, Mr. Betts made statements on Facebook.com encouraging people to come to Marketplace Mall to riot. It is unknown how many other individuals made similar posts, "liked" Mr. Betts' post, or acted directly pursuant to encouragement from Mr. Betts. We do know that Mr. Betts is not accused of any violent actions that evening; for example, while other community members had altercations with police officers, Mr. Betts did not. While other community members damaged

property, Mr. Betts did not. Regardless, the Government attributes the whole of the incident as well as responsibility for *all* of the damage caused to Mr. Betts personally.

### B. History and Characteristics of Shamar Betts

Shamar Betts was born and raised in Chicago, Illinois. He lost his mother in 2012, when he was 11 years old. After her death, Mr. Betts moved to Mississippi to live with his father until he was 17, at which time he moved to Urbana to finish high school while living with his older brother. While he was living in Urbana, he graduated from Urbana High School in 2019 and obtained employment with the Urbana Park District and the Boys & Girls Club working with children. He has been described by co-workers and employers as reliable, dependable, friendly, and very good with kids.

Mr. Betts has no criminal record. He has had a few traffic tickets, but no misdemeanor or felony convictions. Perhaps this is obvious, as he passed background checks in order to be able to work with children. He was employed up until the point that the COVID-19 pandemic shut down all public gatherings in March of 2020. At the time of the alleged offense, Mr. Betts was 19 years old and not on any form of supervision or probation.

Through Mr. Betts' employment, he befriended the proposed third party custodian in this case. She and her husband have offered their home in Urbana to Mr. Betts, to reside there on home detention (along with other conditions) until his trial date in this case.

### C. Weight of the Evidence

As discussed above, although Mr. Betts has allegedly made social media posts Expressing outrage over the death of George Floyd and encouraging community members to rise up and defend black rights, there is no indication as to how many people saw, reacted to, or were actually encouraged by said social media posts. Regardless, the statute in question is one so rarely used that there is no Sentencing Guideline affiliated with the section. Mr. Betts plans on pursuing dismissal of the case on constitutional grounds, but even if he were to be convicted of the offense, it is a probationable crime that is punished by a maximum of five years in custody. With no prior criminal record and a history of employment, Mr. Betts may very likely not spend a single day in prison if convicted.

## III. Conclusion

Shamar Betts is 19 years old, has no criminal record, and has succeeded in graduating from high school and obtaining employment in a situation with very little parental support. He has established himself as a valuable member of his community, working with children and creating a surrogate family for himself in Urbana. That surrogate family includes a loving couple who are willing to welcome him into their home. The presence of third party custodians, even one who has a misdemeanor record from 15 years ago, will ensure his appearance at trial and his compliance with all of this Court's conditions of bond.

The fact that Mr. Betts behaved as a scared child would when they are in trouble, by fleeing to his remaining living parent, should not preclude this Court from allowing him bond. Judge Long correctly decided the issue of bond, and this Court should find the same.

        Respectfully submitted,

        SHAMAR BETTS, Defendant,

        THOMAS PATTON, Federal Public Defender

            /s/Elisabeth R. Pollock
            Assistant Federal Public Defender
            300 West Main Street
            Urbana, IL 61801
            Phone: 217-373-0666
            FAX:   217-373-0667
            Email: Elisabeth_Pollock@fd.org

CERTIFICATE OF SERVICE

I hereby certify that on July 14, 2020, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

s/ Elisabeth R. Pollock