E-FILED
Friday, 23 October, 2020  05:45:34 PM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CR-20047 |
| | ) | |
| SHAMAR BETTS, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES OF AMERICA'S RESPONSE TO THE DEENDANT'S MOTION TO DISMISS INDICTMENT

NOW COMES the United States of America, by John C. Milhiser, United States Attorney for the Central District of Illinois, and Eugene L. Miller, Assistant United States Attorney, and pursuant to Tile 18, United States Code, Section 3145(a)(1), herby requests that the Court deny the defendant's motion to dismiss the indictment pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure.

## INTRODUCTION

As alleged in the indictment, the defendant, Shamar Betts, incited and participated in a riot in Champaign, Illinois, around May 31, 2020, in violation of the Anti-Riot Act, 18 U.S.C. § 2101. More specifically, the grand jury alleged that the defendant used facilities of interstate commerce to incite the riot, which resulted in approximately 50 local businesses being vandalized and looted. The defendant argues that the Anti-Riot Act, enacted in 1968, is facially unconstitutional under the First Amendment. The defendant not only is incorrect, but his argument is foreclosed by controlling Seventh Circuit precedent that holds that a narrowing interpretation of the

Act avoids any First Amendment concerns. Simply put, inciting and participating in a

riot are criminal acts, not protected speech. Even if the Supreme Court or Seventh

Circuit would later find some provisions of the Act unconstitutional, those provisions

can be severed, and the rest of the statute, and the indictment, upheld.

The defendant's other principal argument is that the Anti-Riot Act is void for

vagueness. This argument is meritless. The terms used in the Act have common

understandings and are routinely used throughout criminal codes. The Act sufficiently

puts citizens on notice as to what constitutes criminal behavior.

The defendant also argues that the Act is unconstitutional as applied to the

defendant because his actions in using a cellular telephone and the internet were of an

intrastate nature. This argument is likewise meritless. It is well settled that Congress has

the authority under the Commerce Clause to regulate the purely intrastate use of

facilities of interstate commerce. Finally, the remaining arguments of the defendant are

equally without merit.

### **RELEVANT BACKGROUND**[1]

A federal grand jury has charged the defendant, Shamar Betts, with inciting a

riot in violation of Title 18, United States Code, Section 2101. R. 15. The charges relate to

---

[1] We use the following abbreviations for record citations: References to the documents in the record are to the docket number on the district court's docket sheet, e.g., "R. __"; references to the docket entries in the record are to "D.E. __"; references to the Defendant's Motion to Dismiss the Indictment filed October 1, 2020, are to "Def.Br.__".

a riot on Sunday, May 31, 2020, that began at Market Place Mall in Champaign, Illinois, and then spread to other businesses in the area. R. 1 ¶¶8-10.

The defendant is alleged to have incited the riot by posting a flyer on his Facebook Account stating, "RIOT @ MarketPlace Mall" at 3 p.m., and encouraging people to bring bricks. R. 1 ¶7. The flyer stated, "After the mall we hitting the whole PROSPECT & NEIL." R. 1 ¶7. The area of North Prospect Avenue and Neil Street, where the mall is located, is a commercial area in Champaign. The flyer included an image of a burning vehicle. R. 1 ¶7. The defendant also posted a message, which accompanied the flyer, stating that he wanted the community to "fear us." R. 1 ¶6. (A copy of the flyer and accompanying message are attached to the criminal complaint. R. 1, Ex. A & B.) This posting took place during a weekend of national civil unrest.[2]

The defendant participated in the rioting and looting by taking clothing from the vandalized Old Navy store located at Market Place Mall. R. 1 ¶¶ 9-12. During the riot, the defendant posted on Facebook Live a video stating, "Look what a n[***]a just started…look what a n[***]a just started. We out here…we out here…we out here…we out here. All ya'll talking that s[**]t under my post…we out here. F[**]k that I needs that…we out here." R. 1 ¶9; MJ Tr. 7. During and after the riot, the defendant bragged about starting the riot, stating "I started this," "We out here in this b***h. My s**t went up," "Are you sliding to my riot?," "I'm started this mf riot wish yo a** was here," "Got this b***h bussing," and "I'm a f*****g hero." R. 1 ¶13.

_____

[2] Law enforcement officers did not find any social media posts that incited the riot other than the defendant's posts.

The riot caused thousands of dollars of damages, including smashed windows and broken doors, and the looting of approximately 50 businesses, including multiple small businesses that were set to reopen on June 1 after being shut down due to the COVID-19 pandemic. R. 1 ¶¶8-10. Dozens of off-duty police officers had to be called to the riot, costing local taxpayers over $100,000 and resulting in multiple assaults of and intense confrontations with police officers. The officers were unable to stop much of the rioting and looting, which continued into the early morning hours of Monday, June 1.

After the riot, the defendant fled to Mississippi, where he used his phone to conduct searches such as, "can police find your location by logging in messenger," "can police track your facebook," and "what are charges for starting a riot." R. 1 ¶14. He also told others on his phone, "I had to leave & getaway until stuff dies down," "I had to bail out . . . s**t got too hot," and when asked if there was a warrant for his arrest, "I left that b***h just in case."

On June 5, 2020, the defendant was arrested by the United States Marshals Service in the State of Mississippi on a state warrant for burglary and a federal warrant for inciting a riot. R. 1 ¶14. Officers seized the defendant's cellular telephone. MJ Tr. 7. The defendant had prior state arrests for kidnapping and unlawful restraint in September of 2019 and domestic battery in January of 2019. Tr. 11. Although the defendant claimed after his arrest that "everybody" knew his father lived in Mississippi, MJ Tr. 9, "everybody" did not include the U.S. Marshals Service, who had

4

to search for the defendant and ultimately arrested him almost a week later at a residence in Mississippi that was not his father's residence.

This Court ordered the defendant detained pending his November 23, 2020, federal trial; this order was affirmed by the Seventh Circuit. Nonetheless, the defendant currently remains in state custody on a pending burglary charge. On October 1, 2020, the defendant filed a motion to dismiss the indictment, alleging that the Anti-Riot Act is unconstitutional on its face and as applied to the defendant. This Court directed the United States to file its response to the defendant's motion by October 23, 2020.

## THE ANTI-RIOT ACT STATUTE

Enacted in April 1968, the Anti-Riot Act was most prominently invoked to prosecute the "Chicago Seven" for their roles in violence at the 1968 Democratic National Convention. In the appeal arising from that prosecution, the Seventh Circuit rejected the argument that the Anti-Riot Act is facially unconstitutional under the First Amendment. *See United States v. Dellinger*, 472 F.2d 340, 354–64 (7th Cir. 1972).

The Anti-Riot Act provides, in pertinent part:

Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent

(1) to incite a riot; or

(2) to organize, promote, encourage, participate in, or carry on a riot; or

(3) to commit any act of violence in furtherance of a riot; or

(4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;

5

and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph (A), (B), (C), or (D) of this paragraph . . . [s]hall be fined . . . or imprisoned not more than five years, or both.

18 U.S.C. § 2101(a).

The reference to nonexistent subparagraphs (A), (B), (C), or (D) is a scrivener's error—apparently resulting from a well-meaning but poorly executed effort to fix a prior clerical error in the statute.[3] It should instead be read as referring to paragraphs (1) through (4) of subsection (a). *See United States Nat. Bank of Ore. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 462 (1993) (court may correct a scrivener's error); *United States v. Palmer*, 854 F.3d 39, 53 (D.C. Cir.) (same), *cert. denied*, 138 S. Ct. 286 (2017); *United States v. Coatoam*, 245 F.3d 553, 557 (6th Cir. 2001) (same); *King v. Hous. Auth.*, 670 F.2d 952, 954 n.4 (11th Cir. 1982) (same).

The Act, in turn, defines "riot" as a "public disturbance involving":

(1)    an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or

(2)    a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons

---

[3] As originally enacted, what is now subsection 2101(a) was labeled paragraph 2101(a)(1), and what are now paragraphs (1) to (4) were labeled subparagraphs (A) to (D). *See* Pub. L. No. 90-284, Title I, § 104; 82 Stat. 75-76 (1968). Decades later, someone apparently realized that subsection 2101(a) contained only paragraph (1), and there was no paragraph (a)(2). In 1996, in an effort to correct that glitch, Congress amended Section 2101 "by redesignating subparagraphs (A) through (D) as paragraphs (1) through (4), respectively." Pub. L. No. 104-294, Title VI, § 601(f)(15); 110 Stat. 3600 (1996). Congress neglected, however, to update the cross-references to subparagraphs (A) to (D) elsewhere in the Act.

having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

18 U.S.C. § 2102(a).

Finally, it provides that the term "to incite a riot" or "to organize, promote, encourage, participate in, or carry on a riot" includes, but is not limited to:

urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

*Id.* § 2102(b).

## **ARGUMENT**

The defendant alleges that the Anti-Riot Act is unconstitutional on its face because (1) it is overbroad under the First Amendment; and (2) it is vague. The defendant also alleges that the Anti-Riot Act is unconstitutional as applied to the defendant under the Commerce Clause. The defendant's claims are without merit. First, the Seventh Circuit has already held that the Act is not overbroad under the First Amendment. *Dellinger*, 472 F.2d at 354–64. Inciting and participating in a riot is not protected speech. Moreover, the Act does not prohibit a substantial amount of protected speech. Of course, even if limited portions of the Act were found to be overbroad under the First Amendment, they could be severed, and the remainder of the Act enforced. *See United States v. Miselis*, --- F.3d ---, 2020 WL 5015072, at *19-21 (4th Cir. Aug. 4, 2020).

Second, the Act is not vague because its terms have settled legal meanings and

7

are commonly understood. Third, the Act is not unconstitutional as applied to the defendant under the Commerce Clause. It is well settled that Congress has the authority to regulate the purely intrastate use of facilities of interstate commerce. Finally, the defendant's remaining arguments are without merit.

## I.  The Anti-Riot Act Is Not Unconstitutionally Overbroad

The defendant's principal challenge to the Anti-Riot Act is a facial overbreadth challenge. Def.Br. at 2-36. As noted, *supra,* the Seventh Circuit long ago rejected a facial overbreadth challenge to the Anti-Riot Act under the First Amendment. *Dellinger*, 472 F.2d at 354–64. The only other circuit to consider such a challenge to the Act recently upheld the defendants' convictions under the Act. *Miselis*, 2020 WL 5015072, at *19-21. District courts have followed suit in rejecting facial overbreadth challenges to the Act. *Accord United States v. Hoffman,* 334 F. Supp. 504, 509 (D.D.C. 1971); *In Re Shead*, 302 F. Supp. 560, 564–67 (N.D. Cal. 1969); *but see United States v. Rundo, et al.*, No. 18-CR-759, Doc. 145 (C.D. Cal. June 3, 2019), *appeal docketed*, No. 19-50189 (9th Cir.).

A facial overbreadth challenge permits litigants "to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression." *Broadrick v. Oklahoma*, 413 U.S. 601, 612 (1973). The First Amendment does not protect all speech. Specifically here, the Supreme Court held in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), that the First Amendment does not protect speech that "is directed to inciting or

producing imminent lawless action and is likely to incite or produce such action."

Under an appropriate narrowing construction, this is precisely the type of unprotected

speech the Act addresses.

The first step in First Amendment overbreadth analysis is to construe the

challenged statute. *United States v. Williams*, 553 U.S. 285, 293 (2008). Second, the court

must determine whether the statute, as construed, "criminalizes a substantial amount of

protected expressive activity." *Id.* at 297. The doctrine of constitutional avoidance

"obligate[s]" a court to "construe [a] statute to avoid" serious constitutional problems.

*INS v. St. Cyr*, 533 U.S. 289, 299–300 (2001). Moreover, even if a statute reaches some

protected speech, it is not constitutionally overbroad if it does not criminalize a

substantial amount of such speech.

### A.     The Seventh Circuit Has Already Rejected the Defendant's Overbreadth Argument After Applying the Required Narrowing Construction

"The traditional rule is that a person to whom a statute may constitutionally be

applied may not challenge that statute on the ground that it may conceivably be applied

unconstitutionally to others in situations not before the Court." *New York v. Ferber*, 458

U.S. 747, 767 (1982). The First Amendment overbreadth doctrine—which allows persons

to attack overly broad statutes even though the conduct of the person making the attack

is clearly unprotected—is "one of the few exceptions to this principle." *Id.* at 768–69.

Nonetheless, "[b]ecause of the wide-reaching effects of striking down a statute on its

face at the request of one whose own conduct may be punished despite the First

Amendment," *id.* at 769, the Supreme Court has recognized that invalidation for

9

overbreadth is "strong medicine" to be applied "sparingly and only as a last resort,"
*Broadrick*, 413 U.S. at 613. Thus, if the statute is "readily susceptible" to a narrowing
construction that would make it constitutional, it must be upheld. *Virginia v. Am.
Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988); *accord Broadrick*, 413 U.S. at 613.

The Anti-Riot Act is readily susceptible to such a narrowing construction. *Id.* The
Act has two elements: first, travel in interstate or foreign commerce, or use of a facility
of interstate or foreign commerce, with intent to do one of four actions enumerated in
subparagraphs (1)–(4); and second, at that time or thereafter, performance or attempted
performance of an overt act "for any purpose specified in" subparagraphs (1)–(4).
18 U.S.C. § 2101(a).

The Seventh Circuit already determined in *Dellinger* that the Act need not, and
therefore should not, be read so expansively as to violate *Brandenburg*. The Seventh
Circuit correctly observed that the phrase "for any purpose specified" in § 2101(a) was
amenable to two meanings: either the overt act could be a goal or step toward one of the
actions in categories (1) to (4), or the overt act could be the fulfillment of any purpose
listed in subparagraphs (1) to (4). 472 F.2d at 361–62. The Seventh Circuit adopted the
latter narrower construction, reading categories (1) to (4) as the "necessary overt acts"
themselves. *Id.* at 394. Thus, they are not "merely goals to which the overt acts
contribute." *Id.* As the Seventh Circuit explained, this interpretation is consistent with
the Act's broader text, because § 2101(b) refers to "one or more *of the overt acts* described

in subparagraph (A), (B), (C), or (D) of paragraph (1) of subsection (a)."[4]  *Id.* at 362 (emphasis added).

Having so construed the overt-act element, the Seventh Circuit then examined "whether one could ever be convicted under the statute, reasonably construed, for a speech which fulfilled one of these elements without being sufficiently closely related as the propelling cause of a riot." *Id.* at 361. After reviewing each of the four categories, the Seventh Circuit concluded that the answer is no. The Seventh Circuit understands "incite" in subparagraph (1), one of the main subparagraphs under which this defendant is charged, and aiding and abetting incitement in subparagraph (4), as requiring "the element of propelling the action," *id.*, such that they should be read to refer only to constitutionally proscribable incitement under *Brandenburg*. Portions of subsection (2)—participating in or carrying on a riot, another of the main subparagraphs under which this defendant is charged —and subsection (4)—aiding and abetting the same—also cover only conduct. *Id.* Indeed, these terms appear to require that the riot actually occur. *Id.* Subparagraph (3) requires an act of violence and does not cover any speech. *Id.*

With respect to the remainder of subparagraph (2), the Seventh Circuit concluded that, in context, the terms "organize," "promote," and "encourage," bore a sufficiently close relationship to imminent action. *Id.* For this narrowing construction, the Seventh Circuit relied on the Act's definitional section, which defines all of the verbs

---

[4]  Again, this scrivener's error should be read as referring to paragraphs (1) through (4) of subsection (a).

in § 2101(a)(1) and (a)(2) together:

> As used in this chapter, the term "to incite a riot", or "to organize, promote, encourage, participate in, or carry on a riot", includes, but is not limited to, urging or instigating other persons to riot[.]

18 U.S.C. § 2102(b). Treating all the verbs alike, the Seventh Circuit reasoned, leads to the natural construction that all of the terms cover similar ground. *See Dellinger*, 472 F.2d at 361. Furthermore, while the word "urging" might suggest mere advocacy falling short of incitement, the Seventh Circuit observed that "[n]early all definitions of 'urge' suggest an impelling beyond mere persuasion," and "use of the term in other statutes has been taken to embody a relation to action." 472 F.2d at 362.

The Supreme Court's decision in *Williams* supports the Seventh Circuit's narrow and controlling reading of "promote," "organize," and "encourage." 553 U.S. at 307. In *Williams,* the Supreme Court held that 18 U.S.C. § 2252A(a)(3)(B), which criminalizes the pandering or solicitation of child pornography, was not facially overbroad. 553 U.S. at 307. The Court construed the statute's string of operative verbs -- "advertises, promotes, presents, distributes, or solicits" -- to have a transactional connotation. *Id.* at 294. While recognizing that "promotes" and "presents" were susceptible to multiple meanings taken in isolation, the Court concluded that "in context, . . . those meanings are narrowed by the commonsense canon of *noscitur a sociis*—which counsels that a word is given more precise content by the neighboring words with which it is associated." *Id.* Thus, the Court reasoned, "promotes" -- in the context of the list in which it appears -- "is most sensibly read to mean the act of recommending purported child pornography

to another person for his acquisition." *Id.* at 294–95. So construed, the statute fell well within constitutional bounds, as it did not prohibit advocacy of child pornography but only offers to provide or requests to obtain it. *Id.* at 299.

The same canon applies to § 2101(a)(2), and it undercuts the defendant's argument that "promote," "organize," and "encourage" necessarily imply a degree of action short of imminent, lawless action. In the context of a list that proscribes acts to "participate in" or "carry on" a riot—terms that have an immediate relationship to violence—the words "organize," "promote" and "encourage" are reasonably understood similarly to connote only speech with an imminent connection to violence. Therefore, as the Seventh Circuit has held, they do not extend to protected speech under *Brandenburg*. *Accord In Re Shead*, 302 F. Supp. 560, 564–67 (N.D. Cal. 1969) (adopting a similarly narrow construction of the Act to comport with *Brandenburg* by focusing on the definition of "riot" as requiring the promotion of acts of violence or threats of acts of violence with ability for immediate execution, which "constitute a clear and present danger of" damage or injury to person or property); *see also United States v. Hoffman*, 334 F. Supp. 504, 509 (D.D.C. 1971) (following *Shead* and rejecting First Amendment claim based on *Brandenburg*).

The Seventh Circuit's controlling holding in *Dellinger* forecloses the defendant's argument that the Anti-Riot Act is unconstitutionally overbroad on its face in violation of the First Amendment. Although the defendant argues at length that *Dellinger* was wrongly decided, including citing extensively to its dissent, the Seventh Circuit's

decisions "remain binding precedent" on this Court until the Supreme Court or the

Seventh Circuit "see fit to reconsider them, regardless of whether subsequent cases

have raised doubts about their continuing vitality." *Bosse v. Oklahoma*, 137 S. Ct. 1, 2

(2016) (quoting *Hohn v. United States*, 524 U.S. 236, 252–253 (1998)).

### B.  The Anti-Riot Act Does Not Prohibit a Substantial Amount of Protected Speech

Even if the Seventh Circuit had not held that the Anti-Riot Act must be construed

narrowly so as not to violate *Brandenburg,* the Act still is not unconstitutionally

overbroad because it does not prohibit a substantial amount of protected speech. A

statute that reaches protected speech is not facially invalid unless it "prohibits a

substantial amount of protected speech . . . not only in an absolute sense, but also

relative to the statute's plainly legitimate sweep." *Williams*, 553 U.S. at 292. As the

Supreme Court has explained, "the overbreadth doctrine's concern with chilling

protected speech attenuates as the otherwise unprotected behavior that it forbids the

State to sanction moves from 'pure speech' toward conduct." *Virginia v. Hicks*, 539 U.S.

113, 124 (2003) (quotation and citation omitted).

"Rarely, if ever, will an overbreadth challenge succeed against a law or

regulation that is not specifically addressed to speech or to conduct necessarily

associated with speech (such as picketing or demonstrating)." *Id.; United States v.

Osinger*, 753 F.3d 939, 944 (9th Cir. 2014) (rejecting overbreadth challenge to federal

stalking statute because "the proscribed acts are tethered to the underlying criminal

conduct and not to speech"). "[W]here conduct and not merely speech is involved, . . .

14

whatever overbreadth may exist should be cured through" as-applied litigation. *Broadrick*, 413 U.S. at 615–16; *accord Hicks*, 539 U.S. at 124.

Moreover, "there are substantial social costs created by the overbreadth doctrine when it blocks application of a law to constitutionally unprotected speech, or especially to constitutionally unprotected conduct" -- "particularly a law that reflects 'legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct.'" *Hicks*, 539 U.S. at 119 (quoting *Broadrick*, 413 U.S. at 615). Congress has a plainly legitimate interest (indeed, an important and substantial interest) in protecting public safety and keeping the facilities of interstate commerce free from injurious uses, including riotous disturbances with violence or the threat of violence. *See, e.g., United States v. Bonin*, 932 F.3d 523, 535 (7th Cir. 2019) (upholding federal statute, citing compelling government interest in public safety), *cert. denied*, 140 S. Ct. 960 (2020). That interest is unrelated to the suppression of free expression. The Act is an important tool to effectuating that Congressional purpose.

To ensure that overbreadth concerns justify prohibiting all enforcement of the Anti-Riot Act despite the high societal cost of invalidating the statute on its face, the Supreme Court has "insisted that [the] law's application to protected speech be 'substantial.'" *Hicks*, 539 U.S. at 119–20. Given these principles, an "overbreadth claimant bears the burden of demonstrating, from the text of [the law] and from actual fact, that substantial overbreadth exists." *Id.* at 122 (internal quotation and citation omitted). The defendant cannot carry this burden.

15

The vast majority of the Act legitimately encompasses unprotected speech and a range of non-expressive conduct. Acting "to incite a riot," § 2101(a)(1), as discussed above, should be understood to incorporate *Brandenburg's* requirement of "advocacy directed to inciting or producing imminent lawless action" that "is likely to incite or produce such action." 395 U.S. at 447. The First Amendment does not protect violence, *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 916 (1982), or incitement to illegal activity. *Williams*, 553 U.S. at 298. Participating in or carrying on a riot, § 2101(a)(2), as well as committing any act of violence in furtherance of a riot, § 2101(a)(3), relate only to conduct, not speech. Subparagraph (a)(4)'s prohibition on aiding and abetting participating in or carrying on a riot or committing an act in furtherance of a riot—even if predicated on speech—also falls outside the protection of the First Amendment. "[S]peech or writing used as an integral part of conduct in violation of a valid criminal statute" does not enjoy First Amendment protection. *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 498 (1949).

History reflects this statutory limitation. Almost all the cases brought under the statute—including this one—involve incitement, violent acts, or other conduct, not protected speech. *See, e.g., United States v. Daley,* 378 F. Supp. 3d 539, 545–46 (W.D. Va. 2019) (engaging in acts of violence at rallies and organized demonstrations); *United States v. Markiewicz*, 978 F.2d 786, 795, 812–16 (2d Cir. 1992) (attacking and damaging a gas station, breaking into bingo hall, and assaulting individuals); *Hoffman*, 334 F. Supp.

at 509 (erecting a barricade in a public thoroughfare for the purpose of organizing, promoting, encouraging, participating in and carrying on a riot).

Thus, both in an absolute sense and relative to its plainly legitimate sweep, any limited applications of the statute to speech, contrary to *Dellinger,* for the purpose of organizing, encouraging, or promoting riots are not sufficiently substantial to warrant the drastic remedy of facial invalidation of the statute. Any applications involving advocacy of violence that fail to adhere to *Brandenburg's* imminence requirement can and should be remedied through as-applied litigation rather than wholesale invalidation of the Act.

## C.      The Anti-Riot Act Is Severable

Even if the Seventh Circuit had not already foreclosed the defendant's First Amendment overbreadth argument, he would face another insurmountable hurdle. The indictment rests on violent conduct, not speech. If a court were to construe certain provisions of the Act as applying to a substantial amount of speech advocating non-imminent violence, the court would be required to sever the offending provisions and leave the remainder of the statute intact, including some of the provisions charged in the indictment in this case. *See Miselis*, 2020 WL 5015072, at *19-21 (holding that certain parts of § 2101 are unconstitutional but that the statute is severable and affirming the defendants' convictions).

The Supreme Court has instructed that "[g]enerally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem," severing

any "problematic portions while leaving the remainder intact." *Ayotte v. Planned Parenthood of N. New Eng.*, 546 U.S. 320, 328–29 (2006). "Because 'the unconstitutionality of a part of an Act does not necessarily defeat or affect the validity of its remaining provisions,' . . . the 'normal rule' is 'that partial, rather than facial, invalidation is the required course.'" *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 508 (2010) (quoting *Champlin Ref. Co. v. Corp. Comm'n of Okla.*, 286 U.S. 210, 234 (1932), and *Brockett*, 472 U.S. at 504); *see also United States v. Booker*, 543 U.S. 220, 227 (2005) (severing and excising two provisions in federal sentencing statute incompatible with Court's constitutional holding).

This principle of judicial restraint has important democratic roots, because "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Regan v. Time, Inc.*, 468 U.S. 641, 652 (1984) (quoting *El Paso & Ne. Ry. Co. v. Gutierrez*, 215 U.S. 87, 96 (1909)). Accordingly, "whenever an act of Congress contains unobjectionable provisions separable from those found to be unconstitutional, it is the duty of this court to so declare, and to maintain the act in so far as it is valid." *Id.*

The Supreme Court has repeatedly applied this "sever and excise" principle in the First Amendment context to invalidate only that portion of a statute that runs afoul of the First Amendment. *See, e.g., Brockett*, 472 U.S. at 501–07; *United States v. Grace*, 461 U.S. 171, 183 (1983); *Marsh v. Alabama*, 326 U.S. 501, 509–10 (1946); *Cantwell v. Connecticut*, 310 U.S. 296, 307–11 (1940); *see also Ayotte*, 546 U.S. at 328–31 (2006) (striking down on First Amendment grounds a state statute but remanding for a determination

of severability); *City of Lakewood v. Plain Dealer Publ'g Co.*, 486 U.S. 750, 772 (1988) (similar).

For the reasons discussed *supra*, under a reasonable narrowing construction, the Seventh Circuit has held that the Anti-Riot Act is not facially overbroad. To the extent the Supreme Court or Seventh Circuit should later overrule *Dellinger*, however, the proper remedy would be to follow the "normal rule," *Brockett*, 472 U.S. at 504, and to strike only the unconstitutional portion, leaving the remainder of the Act intact. "Unless it is evident that the Legislature would not have enacted those provisions which are within its power, independently of that which is not, the invalid part may be dropped if what is left is fully operative as a law." *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 684 (1987). This is not a case where the permissible part of the legislation is incapable of functioning independently. *See id.* Nor is this a case where excising and severing any unconstitutional portion would "create a [statute] quite different from the one the legislature actually adopted." *Sloan v. Lemon*, 413 U.S. 825, 834 (1973). As the Seventh Circuit found soon after the Act was passed, Congress' concern in passing the Act was "stopping riots." *Dellinger*, 472 F.2d at 357. There is no reason to believe Congress would have preferred no statute to a more limited one, which would still address the dangerous and destructive riot at issue in this case.

In fact, the Fourth Circuit recently did just that in *Miselis*. It held that Section 2101 was unconstitutional to the extent it applies to "promot[ing]," "encourag[ing]," or "urging" a riot, but affirmed convictions based on the severable part of the statute. 2020

WL 5015072, at *16. Here, while the indictment in this case alleges all of the subparts of § 2101(a) in the conjunctive as permitted by *Dellinger*, the facts alleged in the indictment are that the defendant used facilities of interstate commerce to incite a riot and then participated in and carried on the riot. Under *Miselis,* these specific alleged acts do not implicate *any* protected speech, let alone a substantial amount of it. If the Seventh Circuit or the Supreme Court were later to overrule *Dellinger* and conclude that other portions of the Act run afoul of the First Amendment, consistent with Congressional intent, that Court would be required to strike only those offending portions of the statute and uphold the remainder.

### D. The Anti-Riot Act Does Not Violate the Heckler's Veto Doctrine

Contrary to the defendant'' argument, the Anti-Riot Act also does not violate the heckler's-veto doctrine. Def.Br. at 14-16. That doctrine prohibits "restriction of particular speech due to listeners' actual or anticipated hostility to that speech." *Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1293 (9th Cir. 2015). "The prototypical heckler's veto case is one in which the government silences particular speech or a particular speaker due to an anticipated disorderly or violent reaction of the audience." *Id.* (internal quotation omitted). The defendant's argument ignores the Act's intent requirement.

As the Seventh Circuit recognized in *Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 938 (7th Cir. 1969), the Anti-Riot Act's intent requirement makes heckler's-veto arguments "wide of the mark." The Act does not impose "strict

20

liability for the acts of anyone joining an intended peaceful demonstration." *Id.* Instead, the "intent to engage in one of the prohibited overt acts is a personal prerequisite to punishment," foreclosing challenges based on "innocent intent or unexpected result[.]" *Id.* The charged conduct in this case shows that the defendant's heckler's veto argument is a red herring. The riot in Champaign, Illinois, on May 31, 2020, was a direct result of the defendant's incitement and participation. This is not a case of others reacting violently to the defendant's protected speech; this is a case of the defendant inciting others to riot violently.

Finally, the defendant wrongly contends that the Act impermissibly infringes on freedom of assembly by equating organized assemblies with organized violence. Def.Br. 15-16. The Anti-Riot Act does not apply to all organized assemblies, but only to "public disturbances" involving "acts of violence" or threats of violence "by a person having the ability of immediate execution of such threats." 18 U.S.C. § 2102(a). The Act does not criminalize peaceful protest or lawful assembly. Here, the riot incited by the defendant did not arise from a peaceful protest or lawful assembly; it arose from the defendant's use of facilities of interstate commerce to incite it.

## II.   The Anti-Riot Act Is Not Void For Vagueness

The defendant's other principal argument is that the Anti-Riot Act is void for vagueness because of "ambiguities" in the statute, including the definition of "riot." Def.Br. at 40-49. The defendant's argument is without merit. In fact, courts have previously rejected this very argument. *See Shead,* 302 F. Supp. 560. On the other hand,

no court in the United States has found the Anti-Riot Act to be unconstitutionally vague.

Vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment. *Williams,* 553 U.S. at 304. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id.*

Although ordinarily a defendant who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, the Supreme Court has relaxed that requirement in the First Amendment context, permitting a defendant to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech. *Williams*, 553 U.S. at 304. Nonetheless, "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Id.* (quotation and citation omitted). Moreover, "[w]hat renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Id.* at 306. Thus, a criminal statute is not void for vagueness simply because it "call[s] for the application of a qualitative standard . . . to real-world conduct; the law is full of instances where a man's fate depends on his estimating rightly . . . some matter of degree." *Johnson v. United States*, 135 S. Ct. 2551, 2561 (2015) (quotation omitted). "Close cases can be imagined

under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 304.

The defendant alleges that the definition of "riot" within the statute is unconstitutionally vague. Under the statute, a "riot" is defined as:

> a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual, or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

18 U.S.C. § 2102(a)(2).

Contrary to defendants' assertions, the word "riot" as well as the terms to "incite," "organize," "promote," "encourage," "participate in," or "carry on" a riot are not unconstitutionally vague. Notably, the terms "riot" and "threat" do not call for "wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings." *Williams*, 553 U.S. at 306. "Threat" has a settled legal meaning, *Black*, 538 U.S. at 359, and the Act's detailed definition of "riot" is similar to other rioting statutes. *See, e.g., United States v. Matthews*, 419 F.2d 1177, 1180–82, 1187 (D.C. Cir. 1969) (rejecting vagueness challenge to D.C. rioting statute, which defined riot as "a public disturbance involving an assemblage of five or more persons which by tumultuous and

violent conduct or the threat thereof creates grave danger of damage or injury to property or persons"); *see also Alexandre v. City of Miami,* No. 16-23064, 2018 WL 2463094, at *3 (S.D. Fla. June 1, 2018) (noting the "common law definition of riot" as a "tumultuous disturbance of the peace by three or more persons . . ."); *State v. Beasley,* 317 So.2d 750, 753 (Fla. 1975) (rejecting the contention "that the term 'riot' as used at common law is so vague that a citizen of common intelligence must guess at its meaning").

Thus, the common citizen is provided with many metrics by which to evaluate whether his behavior is criminal. A foundational requirement for a riot is a public disturbance that has an "assemblage of three or more persons." 18 U.S.C. § 2102(a). The assemblage must then have acts of violence or threatened acts of violence. *Id.* If there are actual acts of violence, those acts must constitute a clear and present danger of personal injury or property damage. *Id.* If there are acts of violence threatened, there must be the ability to immediately execute those threats. *Id.* Each of those terms within the definition of "riot" combine to provide the common citizen with notice of whether his conduct amounts to a crime.

Likewise, "incite," "promote," "organize," "encourage," "participate in" and "carry on" present no vagueness concerns according to the Seventh Circuit. *Foran*, 411 F.2d at 938. Several of these terms have been found not to be unconstitutionally vague in other statutes; indeed, courts have recognized them as commonly understood. *Arce v. Douglas*, 793 F.3d 968, 988–89 (9th Cir. 2015) ("promotes"); *Minority Television Project,*

*Inc. v. F.C.C.*, 736 F.3d 1192, 1210 (9th Cir. 2013) (en banc) ("promoting"); *Borden v. School Dist. of Tp. of East Brunswick,* 523 F.3d 153, 173 (3d Cir. 2008) (holding "participate" is not unconstitutionally vague in context); *McConnell v. FEC,* 540 U.S. 93, 170 (2003) (holding "promote" not unconstitutionally vague); *U. S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO,* 413 U.S. 548, 568 (1973) (holding "actively participate" or taking "an active part" not unconstitutionally vague); *Bass v. United States,* 324 F.2d 168, 173 (8th Cir. 1963) (intent to promote, manage, and carry on an unlawful activity).

The Anti-Riot Act, moreover, expressly defines these terms as "urging or instigating other persons to riot." 18 U.S.C. § 2102(b). As the Seventh Circuit noted, the term "urge" itself has a settled legal meaning "suggest[ing] an impelling beyond mere persuasion" and puts a defendant on notice of what is a federal crime. *Dellinger,* 472 F.2d at 361–62. Adopting *Dellinger's* construction of "organize," "promote" and "encourage" as connoting an imminent connection to violence, 472 F.2d at 361, further diminishes any vagueness concerns. The Constitution does not require ever verb of a criminal statute to be further defined. Taken to its logical extreme, the defendant's vagueness challenge would have no end. It would call into question scores of statutory provisions whose plain meaning and regular application cannot be reasonably impugned.

The Act's specific-intent requirement also undercuts defendants' vagueness allegations. "[A] scienter requirement may mitigate a law's vagueness, especially with respect to the adequacy of notice to the complainant that his conduct is proscribed."

25

*Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982); *see also*

*Hill v. Colorado*, 530 U.S. 703, 732 (2000) (holding vagueness concerns were "ameliorated

by the fact that [the statute] contains a scienter requirement"). This is particularly true

for specific-intent offenses. "[W]here the punishment imposed is only for an act . . .

done with the purpose of doing that which the statute prohibits, the accused cannot be

said to suffer from lack of warning or knowledge that the act which he does is a

violation of law." *Screws v. United States,* 325 U.S. 91, 103 (1945).

That is precisely the case here. Under the Anti-Riot Act, the jury must decide

from the facts whether the defendant acted with the requisite riotous intent, thus

mitigating any risk that a defendant will be punished for innocent conduct or a

miscalculation of what constitutes a threat of violence. *Williams,* 533 U.S. at 305. In any

event, there is no basis for pretrial dismissal of the indictment on this ground; instead,

jury instructions may further define the Act's distinction between mere advocacy and

incitement to imminent lawlessness. *See Shead*, 302 F. Supp. at 567.

## III.     The Anti-Riot Act Is Not Unconstitutional As Applied To This Defendant Under The Commerce Clause

The defendant asserts that the Anti-Riot Act is unconstitutional as applied to his

case, although the argument occupies less than a page of his 50-page brief. Def.Br. at 49.

The gravamen of the defendant's undeveloped "as applied to" challenge appears to be

that the federal jurisdictional basis under the Commerce Clause is unconstitutional

because it falls under the provision of the Anti-Riot Act prohibiting the use of a facility

of interstate commerce, rather than interstate travel. The defendant cites no authority

26

for the proposition that Congress does not have the ability to regulate the use of a telephone or the internet under the Commerce Clause. In fact, such an argument is frivolous.

Congress clearly has the authority to regulate "the instrumentalities of interstate commerce." *See United States v. Lopez*, 514 U.S. 549, 558-59 (1995) (interpreting the Commerce Clause, U.S. Const. art. I, § 8, cl. 3). In this case, federal jurisdiction is based on the defendant's use of his cellular telephone and the internet to incite and participate in a riot.

The Anti-Riot Act does not define "facility of interstate . . . commerce," but courts have interpreted that term in other statutes to include a telephone or the internet. *United States v. Mandel*, 647 F.3d 710, 716 (7th Cir. 2011); *see also United States v. Halloran,* 821 F.3d 321, 342 (2d Cir. 2016); *United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014) (citing *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)); *United States v. Morgan*, 748 F.3d 1024, 1031 (10th Cir. 2014); *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007); *United States v. Giordano*, 442 F.3d 30, 40 (2d Cir. 2006); *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997).

Moreover, the phrase also includes the purely intrastate use of such a facility, including a cellular telephone or the internet. *Mandel,* 647 F.3d at 720-22; *see also United States v. Al-Din*, 631 F. App'x 313, 330 (6th Cir. 2015) (rejecting the argument that "instrumentality of interstate commerce" does not include purely intrastate use of a cellular telephone); *United States v. Mitchell*, 2013 WL 5377869, *7 (N.D. Tex. Sept. 26,

2013) ("[T]he intrastate use of a telephone or automobile does qualify as a 'means, facility, or instrumentality of interstate commerce.'") (internal quotation marks omitted); *United States v. Ochoa*, 2009 WL 3878520, *3 n.5 (D.N.M. Nov. 12, 2009) (reasoning that use of the phrase "of interstate commerce" shows Congress's intent to regulate intrastate use of instrumentalities of interstate commerce) (emphasis added).

The defendant's cursory and undeveloped Commerce Clause challenge to the Anti-Riot statute as applied to him is without merit and should be denied.

## IV.  The Defendant's Other Arguments Are Without Merit

The remainder of the defendant's arguments are equally without merit. For example, the defendant argues that the Anti-Riot Act is impermissibly based on content because it applies only to riots. Def.Br. at 36-39. This is akin to arguing that a statute criminalizing threatening to kill a judge is content based because it applies only to threats to kill. Riots and threats are not protected speech and are not constitutionally protected "content." Riots are defined by the statute as public disturbances involving acts of violence or threats of acts of violence by multiple persons that present a clear and present danger of damage or injury to person or property. 18 U.S.C. § 2102(a).

The defendant's argument misapplies content-based jurisprudence. The Anti-Riot Act has no impermissible content-based provision. As the Supreme Court has noted:

> [T]he exclusion of "fighting words" from the scope of the First Amendment simply means that, for purposes of that Amendment, the unprotected features of the words are, despite their verbal character, essentially a "nonspeech" element of communication. Fighting words are thus

> analogous to a noisy sound truck: Each is, as Justice Frankfurter recognized, a "mode of speech," *Niemotko v. Maryland*, 340 U.S. 268, 282, 71 S.Ct. 325, 333, 95 L.Ed. 267 (1951) (opinion concurring in result); both can be used to convey an idea; but neither has, in and of itself, a claim upon the First Amendment. As with the sound truck, however, so also with fighting words: The government may not regulate use based on hostility—or favoritism—towards the underlying message expressed. *Compare Frisby v. Schultz*, 487 U.S. 474, 108 S.Ct. 2495, 101 L.Ed.2d 420 (1988) (upholding, against facial challenge, a content-neutral ban on targeted residential picketing), with *Carey v. Brown*, 447 U.S. 455, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980) (invalidating a ban on residential picketing that exempted labor picketing).

*R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 386 (1992). The Anti-Riot Act is content-neutral: It bans all incitement and participation in violent riots, whether from an avowed white supremacist group like Rise Above Movement, *see Daley*, 378 F. Supp. 3d 539, or from someone citing to the Black Lives Matter movement, as in this case. R. 2, Exh. B. The defendant's argument to the contrary is frivolous.

The defendant also alleges the Act impermissibly fails to require a nexus between the defendant's mental state and his criminal act. Def.Br. at 39-40. This argument appears to be a rehash of his Commerce Clause argument addressed, *supra*. He argues that a criminal act committed wholly within a State cannot be a federal offense unless related to a power of Congress. Def.Br. at 39. This is correct as far as it goes, but as shown above, Congress has the power to regulate facilities of interstate commerce under the Commerce Clause. The defendant also argues the Act can make a defendant "culpable of a federal crime for entirely local conduct with no connection to interstate commerce." Def.Br. at 40. This ignores the plain language of the statute, which requires that the defendant travel in interstate commerce or use a facility of interstate

commerce with intent to violate the statute. 18 U.S.C. § 2101. The defendant's argument is meritless.

Finally, the defendant argues that the Anti-Riot Act proscribes threats that do not rise to the level of "true threats." Def.Br. at 13-14. "True threats" of violence are not protected by the First Amendment. *R.A.V.*, 505 U.S. at 388. The Act requires a threat of violence with the ability of immediate execution of such threat, causing a clear and present danger of damage or injury to person or property. As a result, the statute is consistent with the definition of a "true threat," applying to "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003). To the extent that the Act may punish a broader category of threats, any such scenario is properly addressed through an as-applied challenge rather than facial invalidation of the entire statute. *Hicks*, 539 U.S. at 124; *Broadrick*, 413 U.S. at 615–16.

WHEREFORE the United States of America respectfully requests that the Court deny the defendant's motion to dismiss the indictment.

Respectfully submitted,

JOHN C. MILHISER
UNITED STATES ATTORNEY

s/Eugene L. Miller
Eugene L. Miller, Bar No. IL 6209521
Assistant United States Attorney
201 S. Vine St., Suite 226
Urbana, IL 61802
217/373-5875
Fax: 217-373-5891
eugene.miller@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2020, I electronically filed the foregoing with

the Clerk of the Court using the CM/ECF system which will send notification of such

filing to the following:

> Elisabeth R. Pollock, Esq.
>     Assistant Federal Public Defender
> Thomas A. Drysdale, Esq.
>     Research and Writing Specialist
> 300 West Main Street
> Urbana, IL 61801

> s/Eugene L. Miller
> Eugene L. Miller, Bar No. IL 6209521
> Assistant United States Attorney
> 201 S. Vine St., Suite 226
> Urbana, IL 61802
> 217/373-5875
> Fax: 217-373-5891
> eugene.miller@usdoj.gov