UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-20047 |
| ) | |
| SHAMAR BETTS, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

Now before the Court is Defendant's Motion to Dismiss Indictment. (ECF No. 39). For the reasons stated below, the Motion is DENIED.

### Background

On July 7, 2020, a one-count indictment was filed charging Defendant Shamar Betts with inciting a riot in violation of 18 U.S.C. § 2102. (ECF No. 15). The indictment alleges that on or about May 30 and 31, 2020, Defendant posted a flyer on Facebook to incite, promote, and encourage a riot at Market Place Mall and businesses in Champaign, Illinois. *Id*. at 1. The flyer stated, "RIOT @MarketPlace Mall" and "[a]fter the mall we hitting the whole PROSPECT and NEIL." (ECF No. 1 at 9). The flyer featured an image of a burning vehicle and asked people to "[b]ring friends& family, posters, bricks, bookbags etc." *Id*. at 9-10. The time of the riot was listed simply as "3." *Id*. at 9. Defendant also posted the following message to his Facebook account:

> I'm just the messenger We're literally sitting on our ass watching the whole country and even others fight for our black rights Y'all think we don't suffer through inequality here EVERYDAY We gotta put Champaign/Urbana on the map mfs gone hear and fear us too. SLIDE let's get busy Justice for George FUCK12.

*Id*. at 5, 9.

At approximately 2:36 p.m. on June 1, 2020, a group of about fifty to seventy-five people gathered at the Market Place Mall, and at approximately 3:12 p.m., the group began damaging property and looting stores at the mall. *Id*. at 5. The indictment alleges that as the riot began, Defendant further incited, promoted, and encouraged the riot by posting a video on Facebook Live stating, "[l]ook what a n[***]a just started…look what a n[***]a just started. We out here…we out here…we out here…we out here. All ya'll talking that s[**]t under my post…we out here. F[**]k that I needs that…we out here." (ECF No. 15 at 2). Defendant allegedly participated in the rioting and looting by taking clothing from the vandalized businesses at the mall. *Id*. As he walked from the direction of the mall carrying clothing he had looted, Defendant approached an individual who was recording the event on a telephone and stated: "I started this s[**]t." *Id*.

Law enforcement were deployed to the Market Place Mall in response to the riot and attempted to control the group, which also vandalized and looted other businesses in the area, including Gordman's, Kohls, and TJ Maxx. (ECF No. 1 at 6). The group then continued to businesses on North Prospect Avenue in Champaign and vandalized and/or looted numerous stores in that area, including Meijer, Best Buy, Shoe Carnival, and Walmart. *Id*. By the end of the night, approximately fifty businesses were vandalized, looted, or both throughout May 31, 2020, and into the early morning hours of June 1, 2020. (ECF No. 15 at 2).

After the riot, Defendant fled to Mississippi. (ECF No. 1 at 8). On June 5, 2020, the United States Marshals Service arrested him on a state warrant for burglary and a federal warrant for inciting a riot. *Id*. by On October 1, 2020, Defendant filed a Motion to Dismiss Indictment under Federal Rule of Criminal Procedure 12(b)(3), arguing that the Federal Anti-Riot Act, 18 U.S.C. § 2101, is (1) unconstitutional on its face because it criminalizes protected speech under the First Amendment; (2) unconstitutionally void-for-vagueness; and (3) unconstitutional as applied to

Defendant under the Commerce Clause. (ECF No. 39 at 3). On October 23, 2020, the Government filed a Response. (ECF No. 42). On December 18, 2020, defense counsel filed a Position Statement Regarding Oral Argument on Pending Motion to Dismiss, stating that after consultation with Defendant, he agreed to waive oral argument on the Motion and proceed with the Court ruling on the pleadings. (ECF No. 49). This Order follows.

## Legal Standard

Federal Rule of Criminal Procedure 12(b)(3)(B) permits a party to make a pretrial motion that challenges the sufficiency of an indictment or information. An indictment must include all essential elements of the crimes alleged, and each basis for conviction must be clearly set out in the indictment. *United States v. Palumbo Bros.*, 145 F.3d 840, 860 (7th Cir. 1998). Generally, an indictment that uses the words of the statute to set forth the elements of the charged crime is sufficient. *United States v. Smith*, 230 F.3d 300, 305 (7th Cir. 2000); *United States v. Agostino*, 132 F.3d 1183, 1189 (7th Cir. 1997). The indictment must also contain sufficient factual particulars to "sufficiently apprise the defendant of what he must be prepared to meet." *Russell v. United States*, 369 U.S. 749, 763 (1962). This includes providing enough detail that the defendant can plead the resulting judgment as a bar to any future prosecutions for the same offense. *Id.* at 763-64. A motion to dismiss an indictment does not challenge the strength of the government's case or the sufficiency of the evidence. *United States v. Moore*, 563 F.3d 583, 586 (7th Cir. 2009). Rather, when ruling on a motion to dismiss, the Court must determine "whether it's possible to view the conduct alleged" as constituting the crime charged. *Id*.

## Discussion

In his Motion to Dismiss Indictment, Defendant argues that the Federal Anti-Riot Act, 18 U.S.C. § 2101, is unconstitutional on its face because it criminalizes protected speech under the

First Amendment. (ECF No. 39 at 8-40). Second, Defendant claims that the Act is unconstitutionally void-for-vagueness. *Id*. at 40-49. Finally, he argues that the indictment should be dismissed because the Act is unconstitutional as applied to him specifically. *Id*. at 49.

### I.     Whether the Federal Anti-Riot Act is unconstitutionally overbroad.

Defendant's primary argument is that the indictment should be dismissed because the Act is unconstitutionally overbroad. (ECF No. 39 at 8-40). He asserts that the Act criminalizes a substantial amount of protected speech and assembly and that much more than rioting is criminalized; the Act runs afoul of the Supreme Court's decision in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), because it has no imminence requirement; the Act proscribes expression that does not rise to the level of a "true threat;" the Act creates an impermissible "Heckler's Veto;" the Act criminalizes a substantial amount of expression compared to its legitimate sweep; the Seventh Circuit's decision in *United States v. Dellinger*, 472 F.2d 340 (7th Cir. 1972), regarding the constitutionality of the Act has been so severely undercut that this Court is no longer bound by it; and the Act is a content-based, viewpoint discriminatory restriction on protected expression.

The Government argues that Defendant's claims are without merit because the Seventh Circuit has already held that the Act is not overbroad under the First Amendment. (ECF No. 42 at 7) (citing *Dellinger*, 472 F.2d at 354-64). Additionally, the Government asserts that the Act does not prohibit a substantial amount of protected speech. (ECF No. 42 at 7). The Government argues that the First Amendment does not protect all speech. *Id*. at 8. Specifically, the Supreme Court held in *Brandenburg v. Ohio*, 395 U.S. 444, 447 (1969), that the First Amendment does not protect speech that "is directed to inciting or producing imminent lawless action and is likely to incite or produce such action." *Id*. at 8-9. Under the appropriate narrowing construction, the Government asserts that this is precisely the type of unprotected speech the Anti-Riot Act addresses. *Id*. at 9.

Even if limited portions of the Act are found to be overbroad under the First Amendment, the Government claims that those portions can be severed and the remainder of the Act enforced. *Id.*

"The doctrine of overbreadth applies when a statute lends itself to a substantial number of impermissible applications, such that it is capable of deterring protected conduct, when the area affected by the challenged law substantially involves first amendment interests, and when there is not a valid construction which avoids abridgment of first amendment interests." *Dellinger*, 472 F.2d at 357. "The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Johnson*, 875 F.3d 360, 366 (7th Cir. 2017) (quoting *United States v. Williams*, 553 U.S. 285, 293 (2008)). After construing the statute, the court must then ask if the statute "criminalizes a substantial amount of protected expressive activity." *Williams*, 553 U.S. at 297; *see Dellinger*, 472 F.2d at 359 (finding that the Anti-Riot Act reaches the First Amendment). If the statute is "impermissibly overbroad," a court must then consider whether "the unconstitutional portion" is "severable" from the remainder. *New York v. Ferber,* 458 U.S. 747, 769 (1982). "Altogether, these efforts to preserve a statute from facial invalidation reflect the notion 'that the overbreadth doctrine is strong medicine,' to be applied 'only as a last resort, in cases where it is 'truly warranted.''" *United States v. Miselis*, 972 F.3d 518, 531 (4th Cir. 2020) (quoting *Ferber,* 458 U.S. at 769).

**A. The Federal Anti-Riot Act**

The Act was passed in response to civil unrest in the 1960s and consists of two sections. *Dellinger*, 472 F.2d at 357. Section 2101(a)(1) states:

> Whoever travels in interstate or foreign commerce or uses any facility of interstate or foreign commerce, including, but not limited to, the mail, telegraph, telephone, radio, or television, with intent–

> (1) to incite a riot; or
>
> (2) to organize, promote, encourage, participate in, or carry on a riot; or
>
> (3) to commit any act of violence in furtherance of a riot; or
>
> (4) to aid or abet any person in inciting or participating in or carrying on a riot or committing any act of violence in furtherance of a riot;
>
> and who either during the course of any such travel or use or thereafter performs or attempts to perform any other overt act for any purpose specified in subparagraph [(1), (2), (3), or (4)] of this paragraph–
>
> Shall be fined not more than $10,000, or imprisoned not more than five years, or both.

18 U.S.C. § 2101(a).

> Section 2102(a) defines "riot" as a "public disturbance involving:"
>
> (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or
>
> (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.

18 U.S.C. § 2102(a). Section 2102(b) provides that the term "to incite a riot" or "to organize promote, encourage, participate in, or carry on a riot" includes, but is not limited to:

> urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

*Id*. § 2102(b).

6

**B. The Court is bound by the Seventh Circuit's decision in *Dellinger*.**

As explained below, in *Dellinger*, the Seventh Circuit faced the very question the Court faces here—whether Anti-Riot Act is facially unconstitutional—and upheld the constitutionality of the Act. Defendant acknowledges that this Court is bound by the Seventh Court's precedent in *Dellinger* but suggests that *Dellinger* has been so severely undercut as to compel the Seventh Circuit to overturn it and further states that he is preserving his argument for appeal. (ECF No. 39 at 24). Indeed, the law requires that the Court follow precedent unless it is "almost certain that the higher court would repudiate the doctrine if given the chance to do so." *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731, 734 (7th Cir. 1986) (citations omitted); *see also Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987) (citing *Olson v. Paine, Webber, Jackson & Curtis, Inc.*, 806 F.2d 731 (7th Cir. 1986)). A review of *Dellinger* does not persuade this Court that the Seventh Circuit would be certain to overturn that decision.

In *Dellinger*, when examining whether the Act is overly broad, the Seventh Circuit held that it need not be read so expansively as to violate the *Brandenburg* and observed that the phrase "for any purpose specified" in § 2101(a) presented two meanings: either the overt act could be a goal or step toward one of the actions listed in categories (1) through (4) of the Act, or the overt act could be the fulfillment of any purpose listed in categories (1) through (4). *Dellinger*, 472 F.2d at 360-62. The Seventh Circuit adopted the latter narrower construction, reading categories (1) through (4) as the "necessary overt acts" themselves. *Id*. As the Seventh Circuit explained, this interpretation is consistent with the Act's broader text, because § 2101(b) refers to one or more of the overt acts described in categories (1) through (4) of subsection (a). *Id*. at 362.

After construing the overt act element, the Seventh Circuit then examined "whether one could ever be convicted under the statute, reasonably construed, for a speech which fulfilled one

of these elements without being sufficiently closely related as the propelling cause of a riot." *Id*. at 361. After reviewing each of the four categories listed in § 2101(a)(1), the Seventh Circuit concluded that the answer is no, stating:

> The argument might be developed that while to "incite," "participate in," "carry on," and "aid or abet" any of the foregoing all embody a relation to action in that they logically appear to require that the riot occur, at least to the extent specified in § 2102(a)(2), or, with respect to incitement, require the element of propelling the action, that does not so clearly appear with respect to "to organize, promote, encourage," and that a less close and perhaps insufficient relationship is required as to them. We note, however, that all elements of (A) and (B) are treated alike in § 2102(b), and each "includes, but is not limited to, urging or instigating other persons to riot." We think the more natural construction is that all the terms are on an equal footing with respect to the degree of causal relationship required.

*Id*. at 361. The Seventh Circuit then reasoned that treating all verbs alike leads to the natural construction that all of the terms cover similar ground. *Id*. Furthermore, while the word "urging" might suggest mere advocacy falling short of incitement, the Seventh Circuit observed that "[n]early all definitions of 'urge' suggest an impelling beyond mere persuasion," and "use of the term in other statutes has been taken to embody a relation to action." *Id*. at 362.

In addition to *Dellinger*, there have been a handful of reported cases between 1969 and 1971 that discuss the Act in detail. *Nat'l Mobilization Comm. to End War in Viet Nam v. Foran*, 411 F.2d 934, 938 (7th Cir. 1969) (declaratory judgment about Anti-Riot Act in proceeding related to *Dellinger*); *United States v. Hoffman*, 334 F. Supp. 504, 509 (D.D.C. Nov. 23, 1971) (affirming constitutionality of Act in ruling on motion for disclosure of records of electronic surveillance about one member of the Chicago Seven); and *In re Shead*, 302 F. Supp. 560, 565 (N.D. Cal. 1969) (upholding constitutionality of Act in declaratory judgment brought by Black Liberation Movement), *aff'd on other grounds* in *Carter v. United States*, 417 F.2d 384 (9th Cir. 1969) (finding plaintiffs had no standing to challenge constitutionality of the law).

More recently, the Fourth Circuit considered whether the Act is facially overbroad and questioned the holding in *Dellinger*, but ultimately upheld the defendant's conviction. *United States v. Miselis*, 972 F.3d 518 (4th Cir. 2020). Despite skepticism from the Fourth Circuit, this Court is unpersuaded that the Seventh Circuit is certain to overturn its decision in *Dellinger*. The Seventh Circuit rejected Defendant's overbreadth argument after applying the required narrowing construction, and its holding forecloses Defendant's challenges to the constitutionality of the Act. To the extent that the Seventh Circuit would reconsider its decision *Dellinger*, any unconstitutional provisions could be severed, and the remaining portions of the Act enforced. *See Miselis*, 972 F.3d at 530 (finding that the Act is severable); *see Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 501-07 (1985) (Supreme Court has applied "sever and excise" principle in the First Amendment context to invalidate only portions of statute that run contrary to First Amendment).

The Court is also unconvinced by Defendant's assertion that the Act violates the heckler's veto doctrine, which prohibits "restriction of particular speech due to listeners' actual or anticipated hostility to that speech." *Santa Monica Nativity Scenes Comm. v. City of Santa Monica*, 784 F.3d 1286, 1293 (9th Cir. 2015). "A prototypical heckler's veto case is one in which the government silences particular speech or a particular speaker due to an anticipated disorderly or violent reaction of the audience." *Id*. (internal quotation omitted). As the Seventh Circuit recognized in *Foran*, the Act does not impose "strict liability for the acts of anyone joining an intended peaceful demonstration." *Foran*, 411 F.2d at 938. Rather, one must have the "intent to engage in one of the prohibited overt acts," which "necessarily renders any challenge based on innocent intent or unexpected result wide of the mark." *Id*. In this case, the indictment reflects that Defendant allegedly incited and participated in a violent riot. Therefore, Defendant's request to dismiss the indictment because the Act is unconstitutionally overbroad is denied.

## II. Whether the Federal Anti-Riot Act is void-for-vagueness.

Defendant also argues that the Act is unconstitutionally vague because of ambiguities in the statute, such as the definition of the term "riot" in § 2102(a). (ECF No. 39 at 40). Defendant argues that there are three sources of ambiguity in the definition of "riot." First, he contends that the statute fails to define "public disturbance." (ECF No. 39 at 43). Second, both definitions of "riot" in § 2102(a) require the judgment that an act or threatened act (if carried out) "constitute a clear and present danger of, or shall result in," damage or injury to property or person. *Id*. at 44. Third, he notes that the Act requires that one or more of the people assembled in the public disturbance have "the ability of immediate execution of such threat or threats." *Id*. at 45. Defendant argues that the Act provides no guidance about how to determine whether a person can immediately execute a threat. *Id.* In addition to the term "riot," Defendant also argues the words "incite," "organize," "promote," and "encourage" are unconstitutionally vague. *Id*. at 46. He contends that without statutory definitions, these words do not provide reasonable notice of what conduct is prohibited. *Id*. at 47. Finally, Defendant argues that there is no temporal nexus between the first element (travel or use with a certain intent) and the second element (overt act of any listed purpose) and that this ambiguity allows the Government to exercise broad discretion over what acts to prosecute. *Id*. at 48.

The Government argues that the Act is not void-for-vagueness because it provides the common citizen many metrics by which to evaluate whether his or her behavior is criminal. (ECF No. 42 at 21, 24). The Government asserts that the word "riot," as well as the terms to "incite," "organize," "promote," "encourage," "participate in," or "carry on" a riot, are not unconstitutionally vague. *Id*. at 23. The Government also contends that under the Anti-Riot Act, the jury must decide from the facts whether Defendant acted with the requisite riotous intent, which

mitigates any risk that he will be punished for innocent conduct or a mistaken understanding of what constitutes a threat of violence. (ECF No. 42 at 26) (citing *Williams*, 533 U.S. at 305).

The vagueness doctrine is an outgrowth of the Due Process Clause of the Fifth Amendment. *Williams*, 553 U.S. at 304. "A conviction fails to comport with due process if the statute under which it is obtained fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously discriminatory enforcement." *Id*. "The void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness such that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *United v. Schultz*, 586 F.3d 526, 531 (7th Cir. 2009) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

"What renders a statute vague, however, is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is." *Williams*, 553 U.S. at 306. Thus, a criminal statute is not void-for-vagueness simply because it "call[s] for the application of a qualitative standard… to real-world conduct; the law is full of instances where a man's fate depends on his estimating rightly…some matter of degree." *Johnson v. United States*, 135 S. Ct. 2551, 2561 (2015) (quotation omitted). "Close cases can be imagined under virtually any statute. The problem that poses is addressed, not by the doctrine of vagueness, but by the requirement of proof beyond a reasonable doubt." *Williams*, 553 U.S. at 304.

Here, the Court finds that the Anti-Riot Act is not unconstitutionally vague. In § 2102(a), the term "riot" is well-defined. It means a public disturbance involving an act or acts of violence by an "assemblage of three or more persons." 18 U.S.C. § 2102(a)(1). The act or acts must

"constitute a clear and present danger of" personal injury or property damage. *Id*. at (1)-(2). There must also be the ability to immediately execute those threats. *Id*. at (2). The Court finds that this definition allows ordinary people to understand what conduct is prohibited in a manner that does not encourage arbitrary and discriminatory enforcement. *See Schultz*, 586 F.3d at 531.

Additionally, the Court finds that the terms "incite," "organize," "promote," and "encourage" are not unconstitutionally vague. *See Foran*, 411 F.2d at 938 ("the Riot provisions are not such an encroachment on free speech nor so vague and indefinite as to present a substantial constitutional question"). Other courts have recognized these terms in other statutes as commonly understood. *Arce v. Douglas*, 793 F.3d 968, 988–89 (9th Cir. 2015) ("promotes"); *Minority Television Project, Inc. v. F.C.C.*, 736 F.3d 1192, 1210 (9th Cir. 2013) (en banc) ("promoting"); *Borden v. School Dist. of Tp. of East Brunswick*, 523 F.3d 153, 173 (3rd Cir. 2008) (holding "participate" is not unconstitutionally vague in context); *McConnell v. FEC*, 540 U.S. 93, 170 (2003) (holding "promote" not unconstitutionally vague); *U. S. Civil Serv. Comm'n v. Nat'l Ass'n of Letter Carriers, AFL-CIO*, 413 U.S. 548, 568 (1973) (holding "actively participate" or taking "an active part" not unconstitutionally vague); *Bass v. United States*, 324 F.2d 168, 173 (8th Cir. 1963) (intent to promote, manage, and carry on an unlawful activity).

Furthermore, the Act expressly defines "organize, promote, encourage, participate in, or carry on a riot" as "urging or instigating other persons to riot." 18 U.S.C. § 2102(b). Subsection (b) states:

> As used in this chapter, the term "to incite a riot", or "to organize, promote, encourage, participate in, or carry on a riot", includes, but is not limited to, urging or instigating other persons to riot, but shall not be deemed to mean the mere oral or written (1) advocacy of ideas or (2) expression of belief, not involving advocacy of any act or acts of violence or assertion of the rightness of, or the right to commit, any such act or acts.

*Id*. This Court is bound by the Seventh Circuit's decision in *Dellinger*, which held that "the statute is fairly read as a whole and all basic relations between elements are noted, the statute is not unconstitutional." *Dellinger*, 472 F.2d at 355.

The Court also finds that there is no basis for dismissal of the indictment at the pretrial stage on the ground of vagueness. If necessary, jury instructions can be used to clarify the Act's distinction between advocacy and inciting imminent lawlessness. *See In re Shead*, 302 F. Supp. at 567 ("The provisions of the Act are sufficiently restrictive to sustain its validity, at least until indictments, instructions to a jury, or convictions fail to refine the distinction between mere advocacy and incitement to imminent lawless action"). Therefore, the Court finds that the Anti-Riot Act is not void-for-vagueness.

### III.  Whether the Federal Anti-Riot Act is unconstitutional as applied to Defendant.

Finally, Defendant contends that the Act is unconstitutional as applied to him in this case. (ECF No. 39 at 49). He asserts that the Government bases its jurisdiction on a flyer posted on Facebook, which is insufficient to prosecute him federally. *Id*. He surmises that "[i]f a simple Facebook post was enough to confer federal jurisdiction, there would be no limits to Congress's Commerce Clause regulation of contemporary life in 2020." *Id*. Defendant claims that he is charged with expression, association, and acts in Illinois, which make an imputed interstate-commerce nexus improper. *Id*. In response, the Government argues that the Federal Anti-Riot Act is constitutional as applied to Defendant under the Commerce Clause. (ECF No. 42 at 26). The Government states that federal jurisdiction in this case is based on Defendant's use of his cellular telephone and the internet to incite and participate in a riot. *Id*. at 27.

Congress has the authority to regulate "the instrumentalities of interstate commerce." *See United States v. Lopez,* 514 U.S. 549, 558-59 (1995) (interpreting the Commerce Clause, U.S.

13

Const. art. I, § 8, cl. 3). The Anti-Riot Act does not define "facility of interstate…commerce," but a multitude of courts have interpreted that term in other statutes to include a telephone or the internet. *United States v. Mandel*, 647 F.3d 710, 716 (7th Cir. 2011); *see also United States v. Halloran*, 821 F.3d 321, 342 (2d Cir. 2016); *United States v. Willoughby*, 742 F.3d 229, 240 (6th Cir. 2014) (citing *United States v. Weathers*, 169 F.3d 336, 341 (6th Cir. 1999)); *United States v. Morgan*, 748 F.3d 1024, 1031 (10th Cir. 2014); *United States v. Evans*, 476 F.3d 1176, 1180 (11th Cir. 2007); *United States v. Giordano*, 442 F.3d 30, 40 (2d Cir. 2006); *United States v. Clayton*, 108 F.3d 1114, 1117 (9th Cir. 1997).

The indictment alleges that Defendant "used a facility of interstate commerce, namely, a telephone and the internet," with intent to incite and participate in a riot. (ECF No. 15 at 2). More specifically, the indictment alleges that he posted a message and flyer on Facebook, which, among other things, urged people to bring bricks and meet at Market Place Mall. *Id*. at 1. The indictment also alleges that as the riot began, Defendant further incited, promoted, and encouraged the riot by posting a video on Facebook Live bragging about the riot. *Id*. at 2. Defendant used his cellular telephone and the internet, which are instrumentalities of interstate commerce, to post the Facebook message, flyer, and video. As such, the Court finds that the Government has alleged a sufficient basis to establish federal jurisdiction over Defendant for an alleged violation of the Federal Anti-Riot Act.

## Conclusion

For the reasons stated above, Defendant's Motion to Dismiss Indictment [39] is DENIED. ENTERED this 28th day of December, 2020.

                                                           s/ Michael M. Mihm
                                                           Michael M. Mihm
                                                           United States District Court Judge