E-FILED
Sunday, 25 July, 2021  03:23:07 PM
Clerk, U.S. District Court, ILCD

## IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 20-cr-20047 |
| vs. | ) | |
| | ) | |
| SHAMAR BETTS, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT'S OBJECTIONS TO THE SECOND
### REVISED PRESENTENCE REPORT

Now comes the Defendant, Shamar Betts, by and through his attorneys, Elisabeth R. Pollock and Thomas A. Drysdale of the Federal Defender's Office for the Central District of Illinois, and for his Objections to the Second Revised Presentence Report (R. 77) states as follows:

### I.    Introduction

Mr. Betts initially appeared for sentencing in this matter on June 14, 2021. On that date, this Court determined that Section 2B1.1 of the Sentencing Guidelines applies to Mr. Betts' offense, inciting a riot pursuant to 18 U.S.C. § 2101. The Court did not make a determination regarding the applicability of the Mandatory Victim Restitution Act ("MVRA"), 18 U.S.C. § 3663A, as compared to the Victim Witness Protection Act ("VWPA"), 18 U.S.C. § 3663.

Based on the Court's ruling regarding Section 2B1.1, a Second Revised Presentence Report was filed which calculates Mr. Betts' sentencing guidelines range as

1

follows: base offense level 6, plus 16 levels due amount of loss (approximately $2.2 million), plus 2 levels for 73 victims and/or causing financial hardship to at least 10 victims, plus 2 levels for creating a risk of death or serious bodily injury, and plus 4 levels for being a leader/organizer. PSR ¶¶ 29-34. After credit for acceptance of responsibility, Mr. Betts' total offense level is calculated to be 27. PSR ¶ 40. When combined with a Criminal History Category of I, his advisory guideline range is 70 to 87 months with a statutory cap of 60 months. PSR ¶¶ 78-79. The Second Revised PSR also applies the MVRA's mandatory restitution requirement as opposed to the VWCA's permissive restitution option. PSR ¶ 103.

Mr. Betts now challenges the application of the MVRA and requests a determination that the VWPA's permissive restitution provision applies. He also challenges the loss amount as calculated in the Second Revised Presentence Report. His argument in support of these two positions follows.

## II.    The MVRA does not apply because Mr. Betts did not commit an offense against property as that term is defined in 18 U.S.C. 3663(c)(1)(A)(ii)

As both parties have recognized, the MVRA only applies in certain limited circumstances. Specifically at issue in this case is 18 U.S.C. § 3663A(c)(1)(A)(ii), which states that the MVRA "shall apply" in all sentencing proceedings for convictions of any offense that is "an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii).

The government's brief analysis assumes that a violation of 21 U.S.C. § 2101 is "an offense against property" because Mr. Betts's completed crime eventually **resulted** in property damage. *See* R. 71 at 2-4. But, the analysis is not nearly as simple as the government would have this Court believe.

The statutory construction of 18 U.S.C. § 3663A shows that "crime against property" and "crime that may eventually result in property damage" are not equivalent as the government suggests. *Compare* 18 U.S.C. § 3663A(c)(1)(A)(ii) (using the language "an offense against property") *with* 18 U.S.C § 3663A(b)(1) (using the language "an offense **resulting** in damage to or loss or destruction of property") (emphasis added). This contrasting language shows that the Congress knows how to distinguish between an offense that damaged property itself and an offense that eventually resulted in damage to property. Basic cannons of statutory construction require the Court to read the entire Act and consider the language Congress used in other parts of the statute. Here, the chosen Congressional language in § 3663A shows that an "offense against property" is not the same thing as an "offense resulting in damage to property."

Moreover, even if the government's "fact based approach" is used to determine whether a violation of § 2101 is a "crime against property," the facts of Mr. Betts's offense of conviction – making a flyer and posting it on Facebook – do not involve property damage. Mr. Betts's offense began and ended when he made the flyer and shared it on Facebook. The fact that property damage eventually resulted from this crime does not turn the offense itself into an offense against property. The result of the offense is irrelevant to determining whether the offense itself damaged property. *See*

3

*Hughey v. United States*, 495 U.S. 411, 413 (1990) (award of restitution is authorized "only for the loss caused by the specific conduct that is the basis of the offense of conviction"); *see also United States v. Sloan*, 505 F.3d 685, 695 (7th Cir. 2007) ("Only those losses caused by 'the specific conduct that is the basis of the offense of conviction' are authorized by statute to be the subject of any order of restitution."). Property damage is not part of the specific conduct of Mr. Betts's "offense of conviction," and the fact the property damage might (but need not) eventually result from his offense of conviction does not convert a non-property crime into an offense against property.

The government cannot make a non-property offense into an offense against property for the sole purpose of seeking to impose restitution. Even if the Court believes that restitution "should" be mandatory in a case like this as a matter of policy, the question is whether the statute as interpreted requires the application of the MVRA. *United States v. Blake*, 81 F.3d 498, 506 (4th Cir. 1996). The answer to that question is no, because this is not a crime against property.

a.  **The statutory language of 18 U.S.C. § 3663A shows that an "offense against property" is the not the same as an "offense resulting in damage to property."**

The United States Supreme Court has not explained what constitutes an "offense against property" for the purposes of 18 U.S.C. § 3663A. *See United States v. Collins*, 854 F.3d 1324, 1330 (11th Cir. 2017). Because Mr. Betts's offense of conviction involves no property damage, the government advocates for a "results-based" approach, claiming that an offense is "an offense against property" whenever the offense may (but need not) result in physical damage to property. This approach, however, is inconsistent with

4

the plain language of § 3663A which clearly differentiates between offenses "against

property" and offenses "resulting in damage to property." *Compare* 18 U.S.C.

§ 3663A(c)(1)(A)(ii) *with* 18 U.S.C. § 3663A(b)(1). The use of different language in the

same statue shows that an "offense against property" is unquestionably different from

an "offense resulting in damage to property."

In interpreting § 3663A, the Court begins with the language of the statute. *N.D. v.

United States*, 460 U.S. 300, 312 ("in determining the scope of a statute, one is to look first

at its language."); *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020).

> The plainness or ambiguity of statutory language is determined by
> reference to the language itself, the specific context in which that language
> is used, and the broader context of the statute as a whole.

*Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). "Only the written word is law," *Bostock

v. Clayton Cty., Georgia*, 140 S. Ct. 1731, 1737 (2020), and policy preferences cannot

overcome congressionally written statutes. Where, as here, a statute does not define a

term or phrase, those words generally take "their ordinary, contemporary, common

meaning . . . at the time Congress enacted the statute." *Perrin v. United States*, 444 U.S.

37, 42 (1979) (citation omitted).

The Court starts its analysis with the "rather unremarkable observation that

'against' is not the same as 'relating to' or 'concerning.'" *Collins*, 854 F.3d at 1331. "The

latter two (and their synonyms) sweep much more broadly, and would encompass

offenses with little more than some connection to property." *Id.* "This distinction

matters because, in the process of reading a statute, it is our 'duty . . . to give effect, if

possible, to every clause and word, . . . avoiding . . . any construction which implies that

the legislature was ignorant of the meaning of the language it employed.'" *Id.* (*citing Inhabitants of Montclair Twp. v. Ramsdell*, 107 U.S. 147, 152 (1883)). "Indeed, we 'must presume that a legislature says in a statute what it means." *Id.* (*citing Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)). "Had Congress intended § 3663A(c)(1)(A)(ii) to apply to all criminal acts involving property, even if only tangentially, we think it would have said so. But Congress did not, and the more restrictive language employed counsels against an expansive construction of § 3663A(c)(1)(A)(ii)." *Id.*

Under any reading, however, "criminal conduct does not necessarily qualify as an 'offense against property' solely because it results in property damage or because someone suffers a loss at some point during its execution." *Id.* at 1331-1332. The framework of § 3663A supports this interpretation. *See Davis v. Michigan Dep't of Treasury*, 489 U.S. 803, 809 (1989) ("[T]he words of a statute must be read in their context and with a view to their place in the overall statutory scheme"). "Generally speaking, § 3663A(b) prescribes what an order of restitution must require of a defendant, with subsection (b)(1) specifying that, 'in the case of an offense resulting in damage to or loss or destruction of property of a victim,' the defendant must either return the property or pay the victim some amount to compensate for the loss." *Id.* at 1332. "Equating 'offense[s] against property' in subsection (c)(1) to 'offense[s] resulting in damage to or loss or destruction of property of a victim' in subsection (b)(1) collapses the two subsections." *Id.* "We do not think that is what Congress intended, for it could have easily used the language in subsection (b)(1) to define the covered offenses."

"This construction further harmonizes § 3663A with its discretionary restitution counterpart, 18 U.S.C. § 3663." *Id.* "Under § 3663, courts can impose, on a discretionary basis, restitution for any offense under Title 18 (and other miscellaneous statutes), except that for 'an offense described in [§] 3663A(c),' the court has no discretion and restitution must be imposed." *Id.* (*citing* § 3663(a)(1)(A)). "Significantly, § 3663(b)(1) mirrors § 3663A(b)(1), providing that 'in the case of an offense resulting in damage to or loss or destruction of property of a victim,' the defendant 'may' be ordered to return the property or pay the victim some amount for the loss." *Id.* "If 'offense against property' under § 3663A(c)(1)(A)(ii) means any 'offense resulting in damage to or loss or destruction of property,' § 3663(b)(1) would largely be meaningless, because offenses resulting in damage to or loss of property would always be 'against property' and never eligible for discretionary restitution." *Id.* "Rather than reading § 3663A(c)(1)(A)(ii) to nullify much of § 3663, our construction allows "the two . . . to stand together." *Id.* (citations omitted).

In simple terms, the fact that Congress used "offense against property" in § 3663A(c)(1)(A)(ii) and not "offense resulting in damage to property" as it did in § 3663A(b)(1) shows that Congress clearly intended "offense against property" to have a more narrow meaning. The government's entire position is premised on the fact that Mr. Betts's offense of conviction – inciting a riot – "resulted" in damage to property because, as discussed in great detail below, the facts of the offense of conviction involve no property damage at all. As evidenced by the contrasting language in § 3663A, the government is wrong. The result of Mr. Betts's offense is not what determines whether

it is an offense against property. Rather, the conduct that is the basis of his offense of

conviction controls that determination.

### b. The specific conduct that is the basis of Mr. Betts's offense of conviction involves no property damage.

Having established that the result of Mr. Betts's offense of conviction does not

transform a non-property crime into an offense against property, a violation of 18 U.S.C.

§ 2101(a) is not a "crime against property" because the specific conduct that is the basis

of that offense involves no damage to property. The Supreme Court has expressly held

that the VWPA (and the MVRA) authorizes an award of restitution "only for the loss

caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495

U.S. at 413 (emphasis added). Even using the government's "fact based" approach (R.

71 at 2-3), the "facts and circumstances of the crime that was committed" (a violation of

18 U.S.C. § 2101 – inciting a riot) do not include property damage.

The Seventh Circuit has agreed, citing directly to *Hughey* in holding that

"[c]onsideration of the statutory language suggests persuasively that Congress intended

restitution to be precisely tied to the loss caused by the offense of conviction.

Examination of the conduct constituting the commission of a crime only involves

consideration of the conduct to which the defendant pled guilty, and nothing else."

*United States v. Menza*, 137 F.3d 533, 537 (7th Cir. 1998) (emphasis added).

The government's "fact based approach" is illustrated in a case from the Second

Circuit Court of Appeals, *United States v. Razzouk*, 984 F.3d 181 (2d Cir. 2020). The

defendant in *Razzouk* pled guilty to one count of accepting bribes in violation of 18

U.S.C. § 666(a)(1)(B). 984 F.3d at 181. As part of the sentence the district court ordered the defendant to pay restitution, reasoning that the defendant's bribery conduct was "an offense against property" under the MVRA. *Id.*

On appeal, the Second Circuit held that the defendant's offense was an offense against property under the MVRA. In doing so, the court held that:

> When determining whether the MVRA offense-against-property provision applies to a conviction, courts may consider the facts and circumstances **of the crime that was committed** to determine if it is an 'offense against property' within the meaning of the MVRA. If those facts and circumstances implicate a crime against property, the MVRA requires the court to enter a related order of restitution.

984 F.3d at 186 (emphasis added).

The court reasoned that the "plain text" of the MVRA suggests that "the way the crime is carried out is relevant to its application." *Id.* at 187. Thus, *Razzouk* held that "in determining whether the MVRA requires the defendant to make restitution for losses caused by his bribery offense under § 666(a)(1)(B), **we look to the matter in which Razzouk committed the crime** and the facts and circumstances of the crime." *Id.* at 188 (emphasis added). Applying this "fact based approach," the Second Circuit held that because the bribery itself actually deprived the victim of money, the bribery scheme was properly classified as "an offense against property" for the purposes of the MVRA. *Id.* at 188-189.

*Razzouk* does not hold that the facts and circumstances of the **results** of the defendant's crime determine whether it is an offense against property under the MVRA. Rather, *Razzouk* holds that the Court may look at the manner in which Mr. Betts

**committed the crime** and the facts and circumstances **of the crime** to determine

whether the offense itself is an offense against property. *Razzouk*, 984 F.3d at 188.

      The facts and circumstances "of the crime" Mr. Betts committed involve no

property damage. Mr. Betts created and posted a flyer on Facebook. That is his offense.

The government could have arrested him the moment he posted the flyer and he would

have been guilty of committing the offense of inciting a riot under 18 U.S.C. § 2101(a)

because no riot (and no property damage) ever needed to occur. *United States v.*

*Dellinger*, 472 F.2d 340, 361 (7th Cir. 1972). In fact, the government in the Central District

of Illinois has already indicted another defendant who made similar claims on social

media even though no one showed up to the predetermined "riot" location to damage

any property. *See United States v. Gibson*, No. 20-cr-10041 (C.D. Ill. 2020).

      The fact that property damage "might" occur (or even did occur in this case)

because of the crime of conviction does nothing to change the analysis. The manner in

which Mr. Betts committed the instant offense did not involve damage to property, and

therefore it is not an offense against property under 18 U.S.C. § 3663A.

      The cases cited by the government do not support the proposition that the

"result" of a non-property offense can be used to classify the offense as "an offense

against property" under § 3663A(c)(1)(A)(ii). For example, the government cites to

*United States v. Collins*, 854 F.3d 1324 (11th Cir. 2017). *See* R. 71 at 2-3. *Collins*, like

*Razzouk*, applied a fact-based approach rather than an elements-based analysis to

determine whether the defendant's crime of accepting gratuities with the intent of being

rewarded in connection with the business of a financial institution was an offense

against property under the MRVA. 854 F.3d at 1329. But, in doing so, the Eleventh

Circuit clearly noted that "**criminal conduct does not necessarily qualify as an 'offense**

**against property' solely because it results in property damage** or because someone

suffers a loss at some point during its execution." *Id.* at 1331-1332 (emphasis added).

Moreover, the court also held that "it is not readily apparent to us that a

gratuities offense will always trigger mandatory restitution under the MVRA. For

example, there may be situations where the government establishes criminal liability

under § 215(a)(2) without demonstrating that any improperly influenced transaction

implicated someone else's property." *Id.* at 1335. Ultimately, the court held that the

defendant's specific conduct in that particular case did indeed constitute an offense

against property. *Id.*

*Collins* illustrates the precise point that Mr. Betts is making – that an offense does

not automatically qualify as an offense against property solely because it results in

property damage and that while this offense **might** trigger the MRVA in some cases,

using a fact-based approach, it does not here. A simple hypothetical illustrates the point

made in *Collins* and also illustrates that the facts and circumstances of this particular

case do not implicate a crime against property, but instead show a non-property offense

that "resulted in" property damage.

Consider a situation where a hypothetical defendant went to the parking lot of

the Marketplace Mall in Champaign, Illinois without first making a flyer and posting it

online. The hypothetical defendant then turns on his cell phone and begins

broadcasting to Facebook live while recording himself holding a sledgehammer. During

the process of this recording, the defendant uses the sledgehammer to smash through the window of a car and then proceeds to use the sledgehammer to smash through the glass door at a department store. The defendant signs off by telling everyone watching the video "the riot has started, get out here and join me!" The video is shared hundreds of times across social media. In response to the defendant's video, several individuals converge on the Marketplace Mall and cause further damage to property.

This hypothetical defendant has used property damage to incite a riot. The facts and circumstances of this hypothetical case show a crime against property because property damage was used to commit the actual offense of inciting a riot – it was not simply a result of the underlying offense of conviction. The hypothetical defendant would not be guilty of inciting a riot solely because he damaged property on his own. But, once he used that property damage to encourage others in joining him to do the same, the facts and circumstances underlying "the offense of conviction" (inciting a riot) show that property damage was part of conduct underlying the offense of conviction, making the crime an offense against property.

By contrast, the facts and circumstances of this case show that absolutely no property damage was used to incite a riot – a Facebook post incited the riot. This is precisely what *Collins* held. While 18 U.S.C. § 2101 might be an offense against property in some cases (like the hypothetical outlined above), that does not mean it is an offense against property in every case. The facts and circumstances of this particular case show that it was not. The offense of conviction here involved no property damage. Although property damage may have resulted from the offense of conviction, this does not turn

12

the offense itself into an "offense against property" when the conduct underlying the offense involved no property damage at all. *Collins*, 854 F.3d at 1331-1332.

The government cites to *United States v. Quarrell*, 310 F.3d 664, 678 (10th Cir. 2002) (R. 71 at 3), but *Quarrell* is inapplicable to the instant case because *Quarrell* involved a conspiracy. The law is clear that the post-*Hughey* amendment to § 3663A expanded the definition of victim to remove the proximate cause requirement for offenses involving a conspiracy, changing the analysis for conspiracy offenses. *See generally, Blake*, 81 F.3d at 506; *United States v. Brock-Davis*, 504 F.3d 991, 998-999 (9th Cir. 2007 (noting that restitution awards may go beyond the specific conduct that is basis of the count of conviction only in cases involving schemes, conspiracies, or patterns of activity).

Moreover, the "conspiracy" in *Quarrell* involved an agreement to damage property and therefore the defendant was liable for the entire scope of the conspiracy. *Quarrell*, 310 F.3d at 678. The instant case is not a conspiracy offense and there was no agreement to damage property, so Mr. Betts is not liable for the scope of any agreements. And, in any event, *Quarrell* recognized the same thing *Collins* did: "not every conspiracy will involve an offense against property." *Quarrell*, 310 F.3d at 678. As noted above, even if some violations of § 2101(a) could be an offense against property, this one was not.

While conspiracy offenses expand the scope of liability under the MVRA to the "results" of the crime, the part of *Hughey* "which restricted the award of restitution to the limits of the offense, however, still stands" even after Congress amended the MVRA

13

to expand the scope of the Act to cover the result of conspiracies. *See United States v. Hughey*, 147 F.3d 423, 437 (5th Cir.), *cert. denied*, 525 U.S. 1030, 119 S. Ct. 569, 142 L. Ed. 2d 474 (1998) ("Hughey II"). In simple terms, the conspiracy/scheme/pattern cases are irrelevant to the instant analysis because the property damage was encompassed within the offense itself, which is a conspiracy. Mr. Betts is not charged with a conspiracy and thus these cases are not instructive. *See, e.g., United States v. Sawyer*, 825 F.3d 287 (6th Cir. 2016) (one count of conspiracy to violate the Clean Air Act is an offense against property because it resulted in property damage); *United States v. Brock-Davis*, 504 F.3d 991 (9th Cir. 2007) (motel owner entitled to mandatory restitution for costs associated with clean-up from defendant's conspiracy to manufacture methamphetamine).

Even using a more expansive definition of "offense against property" fails in this case. The Ninth Circuit has said "'against property' means infringing on a victim's property rights." *United States v. Luis*, 765 F.3d 1061, 1066 (9th Cir. 2014). Even if this more expansive definition is used, the specific conduct that is the basis of Mr. Betts's offense of conviction, which controls the analysis (*Hughey*, 495 U.S. at 413), does not infringe on anyone's property rights. Creating and posting a flyer on Facebook, which violated the Anti-Riot Act and is the specific conduct that is the basis of the offense to which Mr. Betts pled guilty, does not infringe on property rights whatsoever. Again, this is not an offense against property unless the government is permitted to define the term using the "results" of the offense and not the specific conduct that is the basis of the conviction itself.

The government tries to ignore the fact that the specific conduct that is the basis of Mr. Betts's offense of conviction involves no property damage by pointing to the definition of "riot," arguing that because "the statutory definition of 'riot' includes acts that result in damage or injury to the person or property of another" that Mr. Betts's conviction for violating 18 U.S.C. § 2101 is an "offense against property." R. 71 at 2. But this analysis is wrong for the simple fact that Shamar Betts is not charged with rioting – he is charged with **inciting** a riot under § 2101. The government, as it must, admits the same. *See* R. 71 at 12 ("[t]he defendant's federal offense of conviction is that he incited and organized a riot").

The Seventh Circuit has been clear that a riot (meaning injury to the person or damage to property) need not occur at all to support a conviction under 18 U.S.C. § 2101. *See Dellinger*, 472 F.2d at 361 (There is, however, no requirement in §§ 2101 and 2102 that the riot as defined in § 2102(a) occur); *see also United States v. Miselis*, 972 F.3d 518, 536 (4th Cir. 2020) ("incite" in the world of *Brandenburg v. Ohio*, 395 U.S. 444, 89 S. Ct. 1827, 23 L. Ed. 2d 430 (1969), refers to speech that is "directed and likely to produce imminent lawlessness"). If there is no requirement that the riot defined in § 2102 ever actually occur, then a violation of § 2101 cannot possibly be an offense against property based on the definition of riot in § 2102 because no riot, and thus no property damage, is necessary to be convicted.

"Examination of the conduct constituting the commission of a crime only involves consideration of the conduct to which the defendant pled guilty, and nothing else." *Menza*, 137 F.3d at 537. Shamar Betts did not plead guilty to rioting or damaging

property; he pled guilty to inciting a riot, the conduct of which was started and

completed when Mr. Betts created a flyer and then used interstate commerce to

distribute it. *See* 18 U.S.C. § 2101(a) (defendant guilty of violating the Anti-Riot Act if he

uses interstate commerce to with the intent to incite a riot and, during the course of

such use, performs any other overt act for inciting a riot).[1]

Again, a simple hypothetical that only changes the facts of this case slightly

illustrates the point. Assume that Mr. Betts made the exact same flyer and posted it to

Facebook in the exact same manner that he did in this case. Assume that the same

number of individuals showed up at the Marketplace Mall, ready to cause property

damage. Now assume that local law enforcement was already in place at the time these

individuals showed up and the mere presence of law enforcement at the scene

dissuaded any individuals from damaging any property. Mr. Betts is still guilty of

violating 18 U.S.C. § 2101(a) because the riot never needed to occur – it only needed to

be imminent. This scenario alone is enough to show that the facts and circumstances of

---

[1]Although the parties substantially disagree what the Act's "overt act" requirement actually means, the Court has determined that the Seventh Circuit's opinion in *Dellinger* controls. However, even under *Dellinger*, the offense of conviction involves no property damage. To avoid an overbreadth problem with the Act, the Seventh Circuit in *Dellinger* stated that "the overt act required by the statute must itself be a fulfillment of one of the elements listed in (A)-(D) (and not just merely a step toward one such element). *Dellinger*, 472 F.3d at 361. Thus, under *Dellinger*, at the time Mr. Betts used interstate commerce (Facebook) he must have specifically intended to incite a riot and inciting the riot must have been the specific purpose which the required overt act (making the riot filer) was done. *Dellinger*, 472 F.2d at 361. The "overt act" that itself was a fulfillment of element (A) – inciting a riot – was the creation of a flyer telling people where to meet and when. The specific conduct that is the basis of Mr. Betts's offense of conviction involves no property damage, even under *Dellinger*.

this offense do not involve property damage and, therefore, this is not an offense against property.

The only way a violation of § 2101 can be an "offense against property" under the "fact based method" is if the defendant actually used property damage to incite the riot – not merely because property damage resulted from a violation of § 2101. As discussed in great detail above, Shamar Betts did not use property damage to incite this riot. He used a flyer on Facebook. Those are the "facts of his offense of conviction" and the fact that § 2102 (the definition of riot) discusses property damage does nothing to change that. *See, e.g.*, *United States v. Adorno*, 950 F. Supp. 2d 426, 428 (E.D.N.Y. May 21, 2013) ("while the extent to which Adorno committed honest services fraud is potentially relevant conduct under the United States Sentencing Guidelines, this is not the offense to which Adorno has pled, and it thus appears that the government and the City may be seeking restitution for losses caused by an unprosecuted offense rather than the offense of conviction, something they may not do.").

Mr. Betts was not charged with "rioting." The government is seeking restitution for an uncharged offense and the result of Mr. Betts's offense of conviction, which is impermissible under the MVRA.

c. **United States Code Title 18 contains several "offenses against property" that are the proper subject of 18 U.S.C. § 3663A(c)(1)(A)(ii).**

While a violation of 18 U.S.C. § 2101(a) was never meant to be an "offense against property," a brief look at other Title 18 offenses show several "offenses against property" where property damage is specifically involved in the conduct that forms the

basis of the offense of conviction. These offenses, as well as the absurd application of the government's theory to other Title 18 offenses, provide further proof that a violation § 2101 is not an offense against property.

For example, 18 U.S.C. § 1361 punishes individuals who willfully injure any property of the United States. Section 1362 discusses willful injury of the property of communication stations, while § 1363 punishes destruction of real or personal property within special maritime and territorial jurisdiction. Section 1366 criminalizes damaging the property of an energy facility, and § 1369 punishes individuals who destroy public structures commemorating the service of individuals in the armed forces. 18 U.S.C. § 844 provides enhanced penalties for those individuals who violate § 842 by using explosive materials to damage buildings.

There is no shortage of crimes under Title 18 that directly involve property damage as part of the conduct that forms the basis of the offense of conviction. These sections show what an "offense against property" is within the meaning of § 3663A: a crime that is committed through damaging property, not an offense that may or may not eventually result in property damage.

Beyond the clear "offenses against property" that are outlined in Title 18, the government's theory of "crime against property" – that any offense can become a property offense simply because property damage eventually results from the commission of the crime – yields absurd results that turn clear non-property offenses into offenses against property.

Take for example a violation of 18 U.S.C. § 1201 – Kidnapping. A person violates 18 U.S.C. § 1201(a) by unlawfully confining and holding a person for ransom, reward or otherwise. No one would (or could) seriously contend that kidnapping is a crime against property. It is clearly an offense against the person. However, under the government's theory, if someone damages property as the result of a kidnapping, a violation of § 1201 is now "a crime against property" and the offender is subject to mandatory restitution under the MVRA because kidnapping is a Title 18 offense.

Another hypothetical is useful to show how easy it is to convert kidnapping into a crime against property using the government's theory. A defendant who kidnaps an individual and holds them in his apartment building (which he does not own) against the victim's will has committed the offense of kidnapping in violation of 18 U.S.C. § 1201. The offense is completed as soon as the defendant holds the victim against their will for ransom, reward, or otherwise. No property damage has occurred, this is not a crime against property. No one would dispute that.

If, however, the victim breaks a window to escape their confinement, property has now been damaged as a result of the defendant's offense. Under the government's theory, kidnapping, a clear offense against the person, is now an "offense against property" simply because property damage occurred as a result of the defendant's crime.

Kidnapping, just like inciting a riot, is not a "crime against property" merely because property damage may (but certainly need not) occur as a result of the offense of conviction. The result of the offense does not determine whether the offense is an

offense against property. Multiple crimes in Title 18 require property damage to commit the offense. The Anti-Riot Act is not one of them. The government's "results-based" theory is not only legally unsupported, it creates a situation where non-property offenses can easily be turned into property offenses after the offense has already been completed. This is not consistent with the language of § 3663A and it is not the law. Mr. Betts has not committed an offense against property and the MVRA does not apply to this case.

III.   **Even if the MRVA applies, restitution is not mandatory because the government has failed to carry its burden as to causation and determining restitution is overly complicated under the MVRA.**

Even if this Court determines that the result of Mr. Betts's offense of conviction transforms a non-property crime into an offense against property under the MVRA, the restitution amount claimed by the government cannot stand because the government has not proven that the property damage was the direct and proximate result of Mr. Betts's offense of conviction.

First, whether someone is a "victim" under 18 U.S.C. § 3663(a)(2) and 18 U.S.C. § 3663A(a)(2) requires an elements based approach that only considers whether the harm to the person resulted "from conduct underlying an element of the offense of conviction." *United States v. Blake*, 81 F.3d 498, 509 (4th Cir. 1996). Mr. Betts's "offense of conviction" is a violation of 18 U.S.C. § 2101, which contains no element of property damage. *See* 18 U.S.C. § 2101(a). As such, none of businesses identified are "victims" of the Facebook post Mr. Betts created.

Second, and more importantly, even if the Court determines that the businesses are victims and determines that Mr. Betts's offense of conviction is a crime against property, restitution is still not mandatory. Pursuant to 18 U.S.C. § 3663A(c)(3)(B), the MVRA shall not apply if the Court finds, from the facts on the record, that "determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process." 18 U.S.C. § 3663A(c)(3)(B).

Here, the government has failed to prove causation and doing so would be extremely difficult, if not impossible. The government has not conclusively shown that the individuals present at the Marketplace Mall on May 30, 2020, were there because of the Facebook post made by Mr. Betts. While the government certainly speculates that all the individuals were present because of the Facebook post, the government has put forth no evidence of who caused the property damage to any specific business and, more importantly, **why** those particular individuals chose to do so. Moreover, the government has shown no connection between the damages to several businesses in the Champaign-Urbana area that occurred on May 30, 2020, that are entirely unconnected to the area where the Facebook post encouraged people to gather (for example, $82,283.95 in restitution claimed for Evergreen Tobacco, located at 306 ½ E. Green St., 2.5 miles away from the Marketplace Mall, nowhere near where the Facebook post told individuals to gather).

As such, determining causation in this case is nearly impossible. When the Court engages in the balancing test set forth at 18 U.S.C. § 3663A(c)(3)(B), it is clear that determining complex issues of causation (who damaged the property and why) would complicate and prolong this process to a degree that the need to provide restitution to a group of businesses (who will be fully compensated for their losses by insurance companies) is outweighed by the burden on the sentencing process. Restitution is not mandatory even if this is a crime against property and the businesses are victims.

### a. Using an elements-based approach, the businesses in this case are not "victims" of Mr. Betts's offense of conviction.

In 1990, the United States Supreme Court expressly noted that the Victim and Witness Protection Act of 1982 ("VWPA") "authorizes an award of restitution only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413.[2] In response to the *Hughey* decision, Congress amended the definition of victim to include any person "directly harmed by the defendant's criminal conduct," but only if the offense involved "as an element" a scheme, conspiracy, or pattern of criminal activity. *See* 18 U.S.C. § 3663(a)(2); 18 U.S.C. § 3663A(a)(2). The amendment, however, "does not authorize a district court to order restitution to **all** individuals harmed by a defendant's conduct." *Blake,* 81 F.3d at 506 (emphasis added). The part of *Hughey* "which restricted the award of restitution to the limits of the offense,

---

[2]Although *Hughey* was interpreting the VWPA and not the MVRA, the MVRA's definition of "victim" is identical to the VWPA's and courts have therefore looked to cases decided under the VPWA for guidance in interpreting the MVRA. *See United States v. Johnson*, 875 F.3d 422, 425 (9th Cir. 2017) (collecting cases); *See also* 18 U.S.C. § 3663(a)(2) and 18 U.S.C. § 3663A(a)(2) (noting the exact same definition of "victim").

however, still stands." *See United States v. Hughey*, 147 F.3d 423, 437 (5th Cir.), *cert. denied*, 525 U.S. 1030, 119 S. Ct. 569, 142 L. Ed. 2d 474 (1998) ("Hughey II").

"For a person to be considered a victim under § 3663, the act that harms the individual must be either conduct underlying an element of the offense of conviction, or an act taken in furtherance of a scheme, conspiracy, or pattern of criminal activity that is specifically included as an element of the offense of conviction." *Blake*, 81 F.3d at 506 (*citing United States v. Broughton-Jones*, 71 F.3d 1143, 1149 (4th Cir. 1995); *United States v. Obasohan*, 73 F.3d 309, 311 (11th Cir. 1996); *United States v. Plumley*, 993 F.2d 1140, 1142-43 (4th Cir. 1993). "But, **if the harm to the person does not result from conduct underlying an element of the offense of conviction**, or conduct that is part of a pattern of criminal activity that is an element of the offense of conviction, the district court may not order the defendant to pay restitution to that individual." *Id.* (citations omitted) (emphasis added).

As such, determining who is a victim requires an elements-based approach. Mr. Betts was not convicted of an offense involving a scheme, conspiracy, or pattern of criminal activity, meaning the post-*Hughey* amendment to the definition of "victim" does not affect the analysis. Thus if the harm to the individual (or in this case the business) did not result from "conduct underlying an element of the offense of conviction," the Court may not order Mr. Betts to pay restitution to said business because the business is not a victim. *Blake*, 81 F.3d at 506.

*Blake* shows why the businesses in this case are not "victims" under the MVRA based on harm not resulting from conduct underlying an element of Mr. Betts's offense

of conviction. In *Blake* the defendant stole 10 credit cards from individuals and then pled guilty to using the stolen credit cards in violation of 18 U.S.C. § 1029(a). 81 F.3d at 501. The district court ordered the defendant to pay restitution in the amount of $1,922.00 to persons from whom he stole the credit cards in addition to $13,824.83 to issuers of the cards that he stole. *Id.* at 503.

The Fourth Circuit reversed the restitution award to the persons from whom the defendant stole the credit cards, reasoning that they were not "victims" of the defendant's offense of conviction. *Id.* at 506. Although these persons had indeed been harmed by the defendant's conduct, "Blake's theft of credit cards represents a pattern of criminal activity that was a necessary step in the accomplishment of his objective . . . [b]ut, the factual connection between his conduct and the offense of conviction is legally irrelevant for the purpose of restitution." *Id.*

The court noted that Blake had pled guilty to use of unauthorized access devices (stolen credit cards) the elements of which included: "1) the intent to defraud; 2) the knowing use of or trafficking in an unauthorized access device; 3) to obtain things of value in the aggregate of $ 1,000 or more within a one-year period; and 4) an effect on interstate or foreign commerce." *Id.* "The specific conduct underlying these elements, and thus forming the basis for Blake's offense of conviction, does not include the theft of the credit cards." *Id.* "As a result, the loss to the robbery victims was not caused by Blake's offense of conviction." *Id.*

Like *Blake*, the elements of Mr. Betts's offense of conviction do not include property damage. 18 U.S.C. § 2101 unquestionably does not require Mr. Betts to harm

anyone or anything and certainly does not include property damage. A violation of § 2101 occurs when a person (1) uses a facility of interstate commerce with the intent to incite, organize, promote or encourage a riot and; (2) performs or attempts to perform any other overt act for any purpose specified in the Act. 18 U.S.C. § 2101(a). Setting aside the parties' disagreement about the Act's "overt act" requirement that was the subject of Mr. Betts's motion to dismiss (R. 39), Shamar Betts's offense of conviction contains the elements of using interstate commerce to post a flyer on Facebook that encouraged people to riot. The Act was violated when Shamar Betts created a flyer encouraging a riot (an overt act with a specific purpose of encouraging rioting activity) and then posted that flyer using the internet, a facility of interstate commerce.

Those are the elements of his offense of conviction. No riot (and thus no property damage) ever need occur for Mr. Betts to satisfy the elements of § 2101. *Dellinger*, 472 F.2d at 361 ("There is, however, no requirement in §§ 2101 and 2102 that the riot as defined in § 2102(a) occur."). Property damage is not an element of Mr. Betts's offense of conviction and thus the businesses' loss in this case was not caused by an element of Mr. Betts's offense of conviction. *See also United States v. Ledesma*, 60 F.3d 750 (11th Cir. 1995) (defendant pled guilty to knowingly attempting to export two stolen motor vehicles. The Eleventh Circuit reversed the order of restitution, noting that the injury to the car's owner was caused by the theft of the vehicle, not by the defendant's subsequent attempt to export the vehicle); *United States v. Schwartz*, 2006 U.S. Dist. LEXIS 33806 (D. Conn. May 25, 2006) (defendant pled guilty to making false statements to the IRS in connection with the federal income tax returns of his CEO. CEO and his

wife were not "victims" of the defendant's offense of conviction because he was convicted of lying to the IRS and the losses to the CEO and his wife "are secondary to, and are not directly caused by, the offense conduct.").

The government in this case is attempting to define "victim" using relevant conduct rather than the elements of Mr. Betts's conviction. Put another way, the government wants to define "victim" using only the "direct harm" approach that applies to offenses involving schemes, conspiracies, and patterns of criminal activity under § 3663A(a)(2). This analysis is wrong. Mr. Betts was not convicted of an offense involving a scheme, conspiracy, or pattern. The second half of the victim analysis in § 3663A(a)(2) does not apply to this case.

The government must show that the harm done to these businesses was a direct and proximate result of "conduct underlying an element of the offense of conviction." That showing is impossible because conduct underlying an element of the offense of Mr. Betts's conviction requires no harm at all. Mr. Betts satisfied all the elements of § 2101 as soon as he posted the message on Facebook and that particular conduct, which underlies the elements of Mr. Betts's offense of conviction, did not cause property damage. The businesses are not victims of Mr. Betts's offense of conviction and the MVRA does not apply even if the Court determines that this is an offense against property.

**b.** **The government has not shown that Mr. Betts's Facebook post was the direct and proximate cause of the businesses' loss.**

The government is attempting to hold Shamar Betts accountable for well over 2 million dollars in restitution that the government candidly admits he cannot pay. R. 71 at 2. The restitution amount the government is requesting is a life sentence for Mr. Betts. Before a lifetime of restitution is imposed for posting a message on Facebook, the government, at minimum, has to adequately show that Mr. Betts's Facebook post directly and proximately caused all the losses sustained by these various businesses identified by the government in docket #71-1. The government has not, and cannot, carry its burden to do so in this case.

Under the MVRA, sentencing courts must order restitution for a victim's "actual loss directly and proximately caused by the defendant's offense of conviction." 18 U.S.C. § 3663A(a)(2). "But for" cause is insufficient. *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013). A district court shall issue and enforce an order of restitution under the MVRA in accordance with 18 U.S.C. § 3664. 18 U.S.C. § 3663A(d). "Any dispute as to the proper amount . . . of restitution shall be resolved by the court by a preponderance of the evidence." 18 U.S.C. § 3664(e).

The burden of demonstrating the amount of loss sustained by the victim as a result of the offense shall be on . . . the Government." *Id.* § 3664(e). Importantly, a calculation of loss under the Sentencing Guidelines does not necessarily establish loss under the MVRA. *United States v. Gallant*, 537 F.3d 1202, 1247 (10th Cir. 2008). "Unlike loss under the Guidelines, the MVRA requires proof of actual loss and does not allow alternative metrics, such as gain." *Id.*

The district court may not "dispense with the necessity of proof as mandated by the MVRA and simply 'rubber stamp' a victim's claim of loss based upon a measure of value unsupported by the evidence." *United States v. Fredman*, 779 F.3d 1129, 1133 (10th Cir. 2015). True, the MVRA does not require a court to calculate a victim's actual loss with "exact" precision. *United States v. Parker*, 553 F.3d 1309, 1323 (10th Cir. 2009). Considered in its entirety, however, the MVRA undoubtedly "require[s] some precision when calculating restitution. Speculation and rough justice are not permitted." *United States v. Anderson*, 741 F.3d 938, 954 (9th Cir. 2013) (emphasis added). Where a district court concludes the record contains insufficient information to permit a timely calculation of a victim's actual loss, the MVRA provides the court with three non-mutually exclusive options: (1) ask the Government to submit additional evidence, (2) hold an evidentiary hearing, or (3) decline to order restitution. 18 U.S.C. §§ 3663A(c)(3)(B), 3664(d)(4), (d)(6). Issuing an order of restitution unsupported by the evidence is not an option. *See United States v. Fair*, 699 F.3d 508, 516, 403 U.S. App. D.C. 39 (D.C. Cir. 2012).

Part of calculating loss is ensuring that the MVRA's direct and proximate cause requirements are met. "The MVRA's proximate causation requirement promotes efficiency by 'limit[ing] a person's responsibility for the consequences of that person's own acts[,] . . . reflect[ing] ideas of what justice demands, or of what is administratively possible and convenient.'" *United States v. Schlifstein*, 2020 U.S. Dist. LEXIS 87886, *7-*8 (S.D.N.Y. May 19, 2020) (*quoting Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 135 (1992)). The Seventh Circuit has expressly held that "Congress intended restitution to be

28

precisely tied to the loss caused by the offence of conviction." *Menza*, 137 F.3d at 537.

"Examination of the conduct constituting the commission of a crime only involves

consideration of the conduct to which the defendant pled guilty and nothing else." *Id.*

In *Menza*, the Court expressly held that there was insufficient reasoning in the

record as to why the district court, "accepted, on their face, the DEA's invoice and,

except for the reduction of replacement costs, Meriter's invoice, without requiring any

further evidence or proof that all costs incurred were directly related to Menza's

convictions." *Id.* at 538. "In the absence of any record to reflect the court's factual

findings regarding the victims' actual losses which directly resulted from the offenses of

conviction we cannot determine whether the district court abused its discretion in

awarding restitution in the amount of $ 15,830.42." *Id.*

In *United States v. Shabudin*, 2018 U.S. Dist. LEXIS 220171 (N.D. Cal. Mar. 1, 2018),

the defendant was found guilty of two conspiracies and five substantive offenses. The

government sought restitution on the theory that all of the defendant's and his co-

conspirators' salaries were part of the victim's losses. *Id.* at *5-*6. In essence, the

government argued that because the victims' funds were used to pay the defendant

while he was engaged in fraudulent conduct, the victims were entitled to restitution. *Id.*

at *6.

In finding that the government had failed to prove causation, the court noted

that speculation was not permitted and that the government must demonstrate the

requisite causal connection between the offense conduct and the victim's loss. *Id.* at *7.

The court noted that it was not sufficient to simply point to a prior Guideline's

calculation to demonstrate loss because the analysis under the MVRA is not the same. *Id.* Moreover, the government had provided no explanation "for why the Court should deem **all** of the salaries earned by Defendant and his co-conspirators to be part of the victims' losses." *Id.* (emphasis in original). "Based on the government's cursory argument, the Court is unable to make a reasonable estimate of the victims' loss in this case, or determine the amount of that loss that is directly and proximately attributable to Defendant's conduct." *Id.*

Both *Menza* and *Shabudin* are instructive here. The government has failed to prove that the losses incurred by the businesses were caused by Mr. Betts's offense of conviction. Again, Mr. Betts's offense of conviction was creating a post and sharing it on Facebook. The government has not shown that any individual was at the Marketplace Mall specifically because of Mr. Betts's Facebook post. Even if it can be assumed that some individuals were at the mall because of the Facebook post, the government has not shown that those individuals are the ones who caused any property damage. In fact, the government has not identified any of the individuals who caused property damage on the date in question, or why they elected to do so.

Rather, the government assumes, without proof or evidence, that every individual at the Marketplace Mall saw the flyer Mr. Betts posted on Facebook and was there because of it. The government knew of several individuals that Mr. Betts conversed with on Facebook and sent direct messages to about the events of May 30, 2020. In fact, the government had Agent Huckstadt read conversations between Shamar Betts and these individuals into the record on the first day of sentencing hearing. But no

evidence was presented that a) the individuals showed up at the mall or b) caused any of the damage.

Rather than bring readily identifiable individuals in to testify as to whether they engaged in any looting and/or property damage as a result of Mr. Betts's flyer, the government asks this Court to do exactly what the Seventh Circuit rejected in *Meza*: find that their Excel spreadsheet with various dollar amounts is sufficient to show that these losses directly and proximately resulted from Mr. Betts's Facebook post, which is his offense of conviction. This is simply insufficient to show causation.

Even a cursory review of the government's Excel sheet presented at sentencing shows that the government is trying to hold Shamar Betts accountable for close to $500,000 of restitution that has nothing to do with the property damage or looting that occurred anywhere near where Mr. Betts encouraged people to meet on May 30, 2020. The following table illustrates restitution amounts that the government is seeking in connection with businesses all over the Champaign-Urbana area. Businesses that are nowhere near the Marketplace Mall and not on Neil or Prospect Streets, which are the locations identified in the Facebook post. Many of these businesses are miles away from the Marketplace Mall with absolutely no connection to the Facebook post whatsoever. These businesses are in Urbana, on the University of Illinois Campus, and as far out as Kirby Avenue in Champaign:

| Business | Address | Total Amount |
|----------|---------|--------------|
| Big Lots | 2004 W. Springfield Ave. | $1,318.16 |
| Boost Mobile | 1003 W. Bloomington Rd. | $27,445.72 |
| Circle K | 1301 S. Mattis Ave. | $4,398.28 |
| Circle K | 1601 W. Springfield Ave. | $14,597.37 |

| Circle K | 2315 W. Springfield Ave. | $6,246.82 |
| CosmoProf Beauty Supply | 2402 W. Springfield Ave. | $79,316.82 |
| Glen Poor's Audio & Video | 1745 W. Kirby Ave. | $705.00 |
| Dollar General | 3001 W. Bradley Ave. | $7,621.96 |
| Evergreen Tobacco | 306 ½ Green St. | $82,283.95 |
| Family Dollar | 1204 N. Market St. | $96,706.97 |
| Flora Gems | 302 W. Kirby | $11,495.54 |
| Fyxit LLC | 202 W. Green St. Ste. 3 | $9,327.29 |
| Gold Rush II Pawn Shop | 41 E. Main St. | $2,722.00 |
| Good Vibes Sound | 2010 Round Barn Rd. | $31,667.00 |
| Kam's | 102 E. Green St. | $1,998.00 |
| Mach 1 Gas Station | 902 W. Bloomington Rd. | $15,236.21 |
| Pawn King | 1004 W. University Ave. Urbana, IL | $2,772.00 |
| Piccadilly Beverage Shop | 2202 W. John St. #3610 | $57,563.00 |
| Piccadilly Beverage Shop | 601 S. 1st St. #101 | $9,112.13 |
| TOTAL | | **462,534.22** |

The government is attempting to hold Mr. Betts's accountable for nearly $500,000 in restitution for businesses that are miles away from where Mr. Betts encouraged people to meet. It does so without showing any connection to Mr. Betts's Facebook post. Instead, much like *Shabudin*, the government is simply speculating that **all** losses in this case were caused by Mr. Betts's Facebook post. It is not sufficient to point to any loss calculation and just assume that this is the amount of loss that can be attributed to Mr. Betts. The government offers no casual connection between all the damage in Champaign-Urbana on May 30, 2020 and Mr. Betts's Facebook post outside of the fact that the damage happen to occur on the same day. The government has not provided the Court with sufficient evidence tying all the loss in this case directly and proximately to the post Mr. Betts made on Facebook. Speculation based on the timing is simply insufficient to show causation. As such, the Court is unable to award restitution under the MVRA.

**c. Determining complex issues of fact related to causation would complicate and prolong the sentencing process to a degree that the need to provide restitution is outweighed by the burden on the sentencing process.**

Based on the complex issues surrounding causation in this case, determining whether Mr. Betts's Facebook post caused all the losses sustained by the businesses would take an inordinate amount of time and overly complicate and prolong the sentencing process. "If the court finds, from facts on the record that determining complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process," then the court is not obliged to provide restitution under the MVRA. 18 U.S.C. § 3663A(c)(3)(B).

"The complexity exception creates a balancing test where a court must weigh the need to provide restitution to a victim against the burden on the sentencing process posed by determining complex issues of fact." *United States v. Malone*, 747 F.3d 481, 486 (7th Cir. 2014). "By enacting this provision, Congress intended district courts to use streamlined processes to make restitution decisions quickly and to not become embroiled in intricate issues of proof." *Id.* (citations omitted). "Nothing in the legislative history evidences an expectation that a sentencing judge would adjudicate, in the course of the court's sentencing proceeding, all civil claims against a criminal defendant arising from conduct related to the offense. . . . the kind of case that Congress had in mind was one in which liability is clear from the information provided by the government and the

defendant and all the sentencing court has to do is calculate damages." *Schwartz*, 2006 U.S. Dist. LEXIS 33806, at *17-*18.

This exception recognizes that restitution is "essentially a civil remedy created by Congress and incorporated into criminal proceedings for reasons of economy and practicality." *United States v. Carruth*, 418 F.3d 900, 904 (8th Cir. 2005). It reflects "Congress's intention that the process of determining an appropriate order of restitution be 'streamlined,' and that the restitution 'determination be made quickly.'" *United States v. Reifler*, 446 F.3d 65, 136 (2d Cir. 2006) (citations omitted). By including this exception in the MVRA, Congress "hoped to avoid creating a system that would, essentially, turn sentencing hearings into complicated, prolonged trials of the normal civil variety." *United States v. Gordon*, 393 F.3d 1044, 1060 (9th Cir. 2004) (Fernandez, J., concurring and dissenting). The statutes "counsel[] against construing the statutes in a way that would bring fault and causation issues before the sentencing court that cannot be resolved with the information otherwise generated in the course of the criminal proceedings on the indictment." *Schwartz*, 2020 U.S. Dist. LEXIS 33806, at *18.

"Congress plainly intended that sentencing courts not become embroiled in intricate issues of proof," related to restitution. *Reifler*, 446 F.3d at 136; *see also United States v. Kones*, 77 F.3d 66, 69 (3rd Cir. 1996) (discussing similar provision in 18 U.S.C. § 3663(a); "[I]t was expected that entitlement to restitution could be readily determined by the sentencing judge based upon the evidence he had heard during the trial of the criminal case."). Put simply, the complexity exception requires "a weighing of the burden that would be imposed on the court by adjudicating restitution in the criminal

case against the burden that would be imposed on the victim by leaving him or her to other available legal remedies." *Schwartz*, 2020 U.S. Dist. LEXIS 33806 at *17.

As outlined above, determining causation would require the government to identify and locate every individual who participated in the events of May 30, 2020, and determine that they damaged property because of Mr. Betts's Facebook post in order to prove causation. Additionally, the government is required to prove all the property damage outlined in the chart in Section II(b), *supra*, which occurred nowhere near the locations described in Mr. Betts's flyer, was casually connected to the Facebook post. This burden is nearly impossible for the government to shoulder based on the complexity of identifying the individuals who caused the property damage and determining why they did so.

At this point, the government has not identified a single individual who was at the Marketplace Mall outside of Shamar Betts, let alone show that the individual saw Mr. Betts's Facebook post, and, if so, that the individual actually caused property damage. It is simply impossible for the government to track down each individual that present on that date and prove that they were at the Marketplace Mall *because* of the flyer made by Shamar Betts. This process would be overly complex and would take an inordinate amount of time. This situation is precisely the type of situation that §3663A(c)(3)(B) was designed to cover.

In *United States v. Schlifstein*, the defendants pled guilty to violating the Federal Anti-Kickback Statute after admitting that they had accepted bribes and kickbacks in the form of speaker fees from a pharmaceutical company in exchange for prescribing a

specific pain medication. 2020 U.S. Dist. LEXIS 87886, at *1-*2. The government claimed that the federal healthcare programs that reimbursed the costs of the drugs prescribed by the defendants were entitled to restitution. *Id.* at *2.

The Southern District of New York declined to award restitution pursuant to 18 U.S.C. § 3663A(c)(3)(B) finding that complex issues of fact related to restitution would complicate or prolong sentencing to an intolerable degree. Specifically, the court noted that "the nature of the defendants' offenses make the Government's burden to establish causation effectively impossible to shoulder." *Id.* at *8. The court found that "the sum that the healthcare programs paid out for every prescription of [the drug] written by defendants during the conspiracy period" was "too blunt" of a measure to calculate restitution. *Id.* Rather, the government would need to isolate and deduce from the programs' total reimbursement costs the sum attributable to the prescriptions of the drug that the defendants would have written even absent the influence of the speaker fees, as well as the reimbursement costs the programs would have paid for other pain medication defendants would have prescribed in lieu of that specific drug if not for the speaker fees received. *Id.*

The government attempted to make the blanket claims that "the defendants would not have prescribed [the drug] to their patients if not for the bribe payments they received from [the company]," and "but for the bribes, the defendants would not have prescribed [that type of drug] at all." *Id.* at *9. However, as the court noted, "the Government's conclusion does not follow automatically from the offense to which the

36

defendants pleaded guilty," nor does the conclusion follow directly from the government's proofs. *Id.*

The government relied on "three graphs" to meet its burden of proving direct and proximate causation. *Id.* The graphs showed "correlation" between the number of drug prescriptions each defendant wrote and the amount of money each defendant received in speaker fees. *Id.* at *10. The court found that "these correlations promote a strong inference that the defendants wrote some, even most, [] prescriptions because they were receiving kickbacks. But they are not enough to support restitution orders for the total cost the federal healthcare programs paid for **all** [] reimbursements." *Id.* at *10 (emphasis in original). "And any attempt to parse the individual prescriptions that might have stayed the same and those that might have been replaced by a prescription for a different drug had the prescribing doctor not received speaker fees would require a tremendous investment of time and judicial resources." *Id.*

The issues in *Schlifstein* are the same issues presented in this case. The government is attempting to hold Mr. Betts liable for all property damage that occurred on May 30, 2020, regardless of whether the individuals actually saw the Facebook post and, if they did, whether the individuals that saw the post are those who caused damage on that day. The government is further attempting to hold Mr. Betts liable for property damage that occurred miles away from the location identified on the flyer, without attempting to connect damages on the University of Illinois campus and in Urbana, Illinois, to Mr. Betts's Facebook post outside of rote speculation that because

the damage occurred on May 30, 2020, it "must have" been caused by the Facebook post.

Simply saying that Shamar Betts is responsible for all the property damage in Champaign-Urbana on May 30, 2020, some occurring multiple hours after the time on Mr. Betts's flyer and in parts of the city that were miles away from the Marketplace Mall and/or Prospect and Neil, is much too speculative. Rather, the government is required to isolate those individuals who caused property damage on May 30, 2020, and show that they did so because of Shamar Betts's Facebook post.

The blanket claim that none of this property damage would have occurred without the Facebook post is wrong. This conclusion "does not flow automatically" from Mr. Betts's offense of conviction. *Schlifstein*, 2020 U.S. Dist. LEXIS 87886, at *9. Much like *Schlifstein*, the government has produced little more than an Excel spreadsheet with dollar figures that an FBI agent has said some businesses reported to him. Even if the damage to property correlates with Mr. Betts's Facebook post and there is a "strong inference" that some, or even most, of the property damage occurred on May 30, 2020, because of Mr. Betts's Facebook post, a mere inference is not enough to support a restitution order for the total cost of **all** the damage done to every business in Champaign-Urbana on May 30, 2020.

And, any attempt to parse out the individuals who actually saw the Facebook post and also damaged businesses because of it "would require a tremendous investment of time and judicial resources." *Schlifstein*, 2020 U.S. Dist. LEXIS 87886, at *10. At bare minimum, the Court is going to have to parse out those damages that are

38

far too remote in both time and distance to be conclusively tied to Mr. Betts's Facebook post.

The government has a burden to meet and meeting that burden as to causation is nearly impossible in this case due to the nature of his offense and the complexity of determining the factual issues surrounding causation. *See United States v. Shabudin*, 2018 U.S. Dist. LEXIS 220171, *6 (N.D. Cal. Mar. 1, 2018) (refusing to reward restitution under the MVRA where the "the government provided no analysis to explain why the entire amount of the salaries at issue should be deemed part of the loss, as opposed to merely a portion, much less provide a principled calculation of the appropriate portion.").

Moreover, when addressing whether the complexity exception in § 3663A(c)(3)(B) applies, the Court can, and should, consider the fact that these businesses are going to be fully compensated for their losses by their respective insurance carriers in assessing the need to provide restitution. Although the government is likely to argue that consideration of insurance payments is barred under 18 U.S.C. 3664(f)(1)(B), that provision only applies to **how much** restitution should be awarded once the Court determines that an award is required. "This language notably does not bar a sentencing court from considering the availability of other relief in determining whether any restitution award would be appropriate, e.g., by stating such relief may not be considered "in determining the availability of restitution." *Gallant*, 537 F.3d at 1253.

In short, "[w]hile the availability of other relief is deemed irrelevant to the process of calculating the amount of a restitution award, it is not necessarily irrelevant

to the availability of such an award under § 3663A." *Id.* at 1254; *see also Malone*, 747 F.3d at 486 ("In applying the complexity exception's balancing test to determine whether to award restitution, the court is not prohibited from considering the existence of a separate civil suit involving the defendant that may provide a full or partial recovery to the victim."); *United States v. Petters*, 2010 U.S. Dist. LEXIS 55040, at *14 (D. Minn. June 3, 2010 (in applying the balancing test set forth at § 3663A(c)(3)(B), the court found that the victims have alternative means available to them other than restitution that are better equipped to resolve their claims (bankruptcy)).

The government bears the burden of proof as to restitution, and the government has not shown that the businesses listed on its Excel spreadsheet do not have insurance. The only business owner who testified at Mr. Betts's sentencing hearing admitted that he has already made insurance claims for both his property damage and lost inventory. When balancing the complexity of determining causation in this case with the degree of the need to provide restitution to the victims, the Court should consider that these businesses have been (or will be) fully compensated for this property damage/inventory loss by their respective insurance companies. There is actually no need to compensate these businesses from payments made by Mr. Betts as their insurance companies have already done so. The restitution money will be going to insurance companies.

In short, proving causation in this case is overly complex and would unnecessarily prolong the sentencing process far beyond what Congress ever intended in making restitution part of the criminal process. The government has not identified

any of the individuals who were at the Marketplace Mall on May 30, 2020, much less

proven that those individuals were there because of Mr. Betts and, even if they were,

that they caused property damage. The government has done nothing to show that the

individuals who damaged businesses miles away did so because of Mr. Betts's

Facebook post. Speculation and assumptions are insufficient to strap a 2.2 million dollar

yoke around the neck of Shamar Betts for the rest of his life based on money that has

been (or will be) paid in full to these businesses through their insurance companies.

There is a better way for these businesses to recoup their losses and that was is

insurance payments. When the Court balances the complexities of identifying all

individuals who were present on May 30, 2020, why they were there, and if they caused

property damage against the fact that the businesses have been or will be compensated

by insurance, the balancing test set forth at § 3663A(c)(3)(B) shows that restitution shall

not apply in this case. The factual issues surrounding causation are simply too complex,

and the need to repay insurance money does not outweigh the burden on the

sentencing process. Restitution is not mandatory under the MVRA.

**IV.    The Sentencing Guidelines Calculation[3]**

In calculating the amount of loss under the guidelines, the general rule is that the

district court determines the greater of actual or intended loss. *United States v. Yihao Pu*,

814 F.3d 818, 824 (7th Cir. 2016) (citing U.S.S.G. § 2B1.1 n. 3(A) (2014)). The guidelines

---

[3]Mr. Betts maintains his objection that U.S.S.G. § 2B1.1 is not a sufficiently analogous Guideline to the offense of inciting a riot. He recognizes the Court's previous ruling to the contrary and maintains his objection for the record and for the purposes of appeal.

define intended loss as "the pecuniary harm that was intended to result from the offense," which "includes intended pecuniary harm that would have been impossible or unlikely to occur." *Id*. The phrase "result from" imposes a requirement of but-for causation. *Id.*, citing *Burrage v. United States,* 134 S.Ct. 881, 886–88, 891 (2014).

But-for causation is a legal concept that takes its definition from a common and ordinary meaning. A thing "results" when it "[a]rise[s] as an effect, issue, or outcome *from* some action, process or design." *Burrage,* 134 S.Ct. at 881-82, citing the New Shorter Oxford English Dictionary 2570 (1993). " 'Results from' imposes, in other words, a requirement of actual causality. 'In the usual course,' this requires proof 'that the harm would not have occurred' in the absence of—that is, but for—the defendant's conduct.' " *Id,* citing *University of Tex. Southwestern Medical Center v. Nassar,* 570 U.S. ––––, ––––, 133 S.Ct. 2517, 2525, 186 L.Ed.2d 503 (2013) (quoting Restatement of Torts § 431, Comment *a* (1934)).

In the present case, the government has not shown that the damages incurred by local businesses on May 30, 2020, was but-for caused by Mr. Betts' Facebook post. News media reports from around the nation indicated that thousands of protests erupted after

the murder of George Floyd.[4] National Guard troops were deployed in 24 states and

Washington, D.C.[5] Demonstrations occurred in at least 1700 cities and in all 50 states.[6]

As noted above, the government has not shown that any individual was at the

Marketplace Mall specifically because of Mr. Betts's Facebook post. Even if it can be

assumed that some individuals were at the mall because of the Facebook post, the

government has not shown that those individuals are the ones who caused any

property damage. In fact, the government has not identified any of the individuals who

caused property damage on the date in question, or why they elected to do so. Rather,

the government assumes, without proof or evidence, that every individual at the

Marketplace Mall saw the flyer Mr. Betts posted on Facebook and was there because of

it. But no evidence has been presented that a) the individuals showed up at the mall or

b) caused any of the damage. As a result, there is no evidence that "but for" Mr. Betts'

Facebook post, the rioting and looting that took place on May 30-June 1, 2020, would

never have occurred. In fact, the massive number of riots and protests that included

property damage across the country indicate that regardless of Mr. Betts' involvement,

---

[4]"Tensions flared in cities from New York to Philadelphia to Columbia, S.C., as thousands of people amassed to protest the death of a black man in police custody." https://www.washingtonpost.com/nation/2020/05/30/george-floyd-protests-live-updates/ (last visited 7/25/21); "The violence happened across America from coast to coast and from big cities to small ones. Beyond the major metropolitan areas, protesters clashed with police in cities including Tulsa, Oklahoma; Little Rock, Arkansas; Albany, New York; Fargo, North Dakota; and Raleigh, North Carolina." https://www.theguardian.com/us-news/2020/may/30/george-floyd-protests-saturday-curfews-minneapolis (last visited 7/25/21);
[5]https://www.newsweek.com/protests-near-melist-cities-rioting-states-where-national-guard-has-been-deployed-1507770 (last visited 7/25/21)
[6] https://www.usatoday.com/in-depth/graphics/2020/06/03/map-protests-wake-george-floyds-death/5310149002/ (last visited 7/25/21).

such an event would likely have occurred anyway. Based on the foregoing, but-for

causation has not been established and the Presentence Report incorrectly attributes

amount of loss to Mr. Betts.

Additionally, even if but-for causation can be established, the amount of loss as

calculated in the Presentence Report is incorrect. The Second Revised Presentence

Report applies a 16-level enhancement for amount of loss based on $2,172,074.90 in

damages to local businesses and $101,927.06 in police overtime. PSR ¶ 30. First, the

government noted at the previous sentencing hearing that it did not intend to request

restitution for local police overtime as it is barred by law. The Seventh Circuit has held

that, unless specifically authorized, investigatory and/or prosecution costs incurred by

the government are not direct losses relating to defendant's criminal conduct which can

be recovered. *United States v. Menza,* 137 F.3d 533, 538-39 (7th Cir. 1998). The

government and law enforcement can be victims of an offense, but the government and

law enforcement "should bear its own costs in relation to its decisions to investigate

and/or to prosecute, even though these decisions may have been motivated by or in

response to potential criminal activity. *Id.* at 539. Based on the foregoing, the amount of

loss for police overtime should not count towards the loss amount in this case.

Additionally, there is almost $500,000.00 in alleged losses (referenced above on

page 33) that have absolutely no relationship to the Marketplace Mall area or the North

Prospect Avenue area, and should also be deducted from the amount of loss calculation

under the Sentencing Guidelines. PSR ¶ 30. However, the resulting reduction would not

change the 16-level enhancement under Section 2B1.1(b)(1) because a loss of

$1,709,540.68 ($2,172,074.90 minus $462,534.22) qualifies for the same number of levels.
For accuracy, if this Court accepts that all of the loss was but-for caused by Mr. Betts,
the amount of loss reflected in the Presentence Report should be $1,709,540.68, despite
the fact that the total offense level does not change.

Respectfully Submitted,

SHAMAR BETTS, Defendant

BY:     /s/ Elisabeth R. Pollock
        ELISABETH R. POLLOCK
        Assistant Federal Public Defender
        300 West Main Street
        Urbana, Illinois 61801
        Telephone: (217) 373-0666
        Facsimile: (217) 373-0667
        Email: Elisabeth_Pollock@fd.org

        s/ Thomas A. Drysdale
        Research and Writing Specialist
        Office of the Federal Public Defender
        300 West Main Street
        Urbana, IL 61801
        Phone: 217-373-0666
        Fax: 217-373-0667
        Email: Thomas_Drysdale@fd.org

**CERTIFICATE OF SERVICE**

I hereby certify that on July 25, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

<u>/s/ Elisabeth R. Pollock</u>
ELISABETH R. POLLOCK
Assistant Federal Public Defender
300 West Main Street
Urbana, Illinois 61801
Telephone: (217) 373-0666
Facsimile: (217) 373-0667
Email: Elisabeth_Pollock@fd.org